Ivan McGEE, Plaintiff and Respondent,

v.

The HEIRS at LAW, Legatees and Devisees of Samuel S. STOKES, Deceased; the Residuary Legatees and Devisees of Mark S. Stokes, Deceased; Olivet Congregational Church of Merriam Park, St. Paul, Minnesota, a religious corporation; Ella L. Bartlett, Mary Ella Hamilton, Fannie May Cady; the Heirs at Law, Legatees, and Devisees of Annie Maddock, Deceased, Lewis Maddock, W. M. Spellisy, Keith L. Rising, the Great Northern State Bank of St. Paul, Minnesota, a corporation, John Tellers, Jr., Sadie M. Steiner, Amy Fall Richardson, The Rickenbacker Motor Company, a corporation, The Citizens State Bank of Frazee, Minnesota, a corporation, Chesebro L. Smith, The Rindlaub Company, a corporation, Peter A. Chalmers, Isa Chalmers, Peter Allan Chalmers, Lois M. Braun, and all other persons unknown having or claiming any estate or interest in or lien or encumbrance upon the property described in the Complaint, Defendants,

Appeal of Agnes TELLERS, Caspar Tellers, Kenneth Tellers, Gordon Tellers, Lois Tellers, and Phyllis Tellers, surviving heirs of John Tellers, Jr., for themselves and for the use and benefit of J. S. Martin, Intervenors and Appellants.

No. 7553.

Supreme Court of North Dakota.

March 6, 1956.

Rehearing Denied April 20, 1956.

146

M. S. Byrne, Bowman, Hyland, Foster & Conmy, Bismarck, for intervenors and appellants.

John A. Amundson, Bowman, Mackoff, Kellogg, Muggli & Kirby, Dickinson, for plaintiff and respondent.

JOHNSON, Judge.

This is an action to quiet title, commenced on the 31st day of March 1953. It covers considerable land not involved in this appeal. The issues in this case involve only the South Half of the North Half (S½N½) Section 21, Township 129 West of Range 105 North of the 5th P.M. The plaintiff purchased this and other real property from Bowman County, North Dakota, under a contract for deed, dated December 5, 1952. John Tellers, Jr., was named as a defendant in the action. The affidavit of publication shows that his legal residence was Cologne, Minnesota. He was deceased on November 5, 1941, and left as his sole surviving heirs, Agnes Tellers, also known as Agnes Schwartz Tellers, his widow, and Caspar Tellers, Kenneth Tellers, Gordon Tellers, Lois Tellers, and Phyllis Tellers, his children.

The issues in this action were decided in favor of the plaintiff and his title to the

premises quieted under his contract for deed.

The defendant intervenors were substituted by court order as parties defendant in place of John Tellers, Jr., deceased. The defendant intervenors have appealed and demanded a trial de novo.

The pleadings are long and set forth a number of facts and contentions. We will not attempt at this time to summarize them but will discuss the facts and contentions advanced to bring out the determination of the issues thereby presented.

An analysis of the pleadings present for determination the following issues:

1. Did the tax title procedure taken and maintained by Bowman County covering the South Half of the North Half (S½ N½) of Section 21, Township 129 North of Range 105 West of the 5th P.M. result in a valid tax title to the premises?

2. Has Bowman County from the time it acquired tax title, March 1, 1940, and leased the premises to the plaintiff, held title adversely to the former owners?

3. Is the agreement entered into between Agnes Schwartz Tellers, the surviving spouse of John Tellers, Jr., Caspar Tellers, Kenneth Tellers and Agnes Tellers as guardian of the estates of Gordon, Phyllis and Lois Tellers, minor wards, and J. S. Martin, dated January 26, 1953, as modified, and the mineral deed and the oil and gas lease issued pursuant to that agreement, champertous and in violation of Sections 12-1714, 12-1716 and 12-1719, NDRC 1943 and contrary to public policy?

Pursuant to the sale of the 1928 delinquent taxes held on the 10th day of December, 1929, and after issuance of notice of expiration of the period of redemption, the State of North Dakota by the county auditor of Bowman County, issued a tax deed to Bowman County covering the premises involved in this action together with other real property on March 1, 1940. The deed was recorded the same day in the office of the register of deeds in Bowman County, North Dakota. On March 6, 1940, Bowman County entered into a pasture and grass lease with the plaintiff, Ivan McGee. On April 10, 1941, a ten year written lease was executed between the plaintiff and Bowman County. He obtained another ten year lease from Bowman County covering the premises on March 11, 1949. From and after the issuance of the auditor's tax deed Bowman County was in possession of the premises under its tenant Ivan McGee, the plaintiff in this action, until the sale of the premises to him under a contract for deed, dated December 5, 1952. He brought the action to quiet title as purchaser of the premises under this contract. The tax deed to Bowman County and the contract for deed to the plaintiff appear valid on their face. The plaintiff had both possession and prima facie an equitable interest in the premises.

When the plaintiff commenced this action on the 31st day of March 1953, Chapter 276 of the 1951 Session Laws was in force. It states that:

"A contract for deed shall constitute color of title within the meaning of this section from and after the execution of such contract."

■ From and after the execution of the contract for deed the plaintiff had color of title. Chapter 276, 1951 Session Laws. See also Robertson v. Brown, 75 N.D. 109, 25 N.W.2d 781.

At the time of the tax forfeiture proceedings taken by Bowman County, John Tellers, Jr., was the record title owner and his place of residence was Cologne, Minnesota. Many defects in the tax title procedure are alleged and asserted by the defendant intervenors for themselves and for the use and benefit of J. S. Martin. We need, however, consider only one.

The notice of expiration of the period of redemption covering the South Half of the North Half (S½N½) Section 21, Township 129 North of Range 105 West of the 5th P.M., was issued by the county auditor of Bowman County, North Dakota, on the 26th day of January 1939. A copy of the notice of expiration of the period of re-

demption was sent by registered mail to John Tellers, Jr., at Cologne, Minnesota, under date of January 28, 1939, and received by him on January 30, 1939.

The notice insofar as pertinent recited that the real estate was offered at tax sale held on the 10th day of December 1929, for delinquent taxes against it:

"that redemption has not been made therefrom and that the same is still the property of such County, and unless redemption is made from such tax sale within ninety days from the date of this notice appearing above my signature tax deed will be issued to the County granting to it and vesting in it absolute title in fee to said property and foreclosing all rights of redemption, and any and all other rights of the owner and of all mortgagees and lien holders and other persons interested therein. There is given herewith the description of such parcels of real estate, and set opposite each description is the amount which will be required upon the date of the expiration of the period of redemption to redeem such real estate from such tax sale exclusive of the cost of serving this notice personally upon the owner and the person in possession thereof.

| Subdivision | Sec. or Lot | Town or Block | Range | | Total Amount Necessary to Redeem |
|---|---|---|---|---|---|
| S½N½ | 21 | 129 | 105 | 1928 | $45 85 |
| | | | | 1929 | 38.27 |
| | | | | 1930 | 42.44 |
| | | | | 1931 | 37.89 |
| | | | | 1932 | 28.51 |
| | | | | 1933 | 30.42 |
| | | | | 1934 | 26.56 |
| | | | | 1935 | 24.36 |
| | | | | 1936 | 21.44 |
| | | | | 1937 | 21.84 |
| | | | | Total | $317.58" |

It will be noted that this notice of expiration of period of redemption states that there is set opposite each description:

"* * * the amount which will be required upon the date of expiration of the period of redemption to redeem such real estate, * * *."
and that the taxes listed include the taxes for the year 1936 and 1937 and that they are included in the total "amount necessary to redeem."

Neither the 1936 nor 1937 taxes on the land under consideration were three years old at the time of the service of the notice of expiration of the period of redemption. The 1936 taxes were due January 1, 1937; the 1937 taxes were due January 1, 1938. These taxes were delinquent for less than three years prior to the issuance of notice of expiration of the period of redemption. The total necessary to redeem included the taxes for both these years.

■ This court has held in a number of cases that where a notice of expiration of the period of redemption is issued by the county auditor upon a tax certificate acquired by the county at a tax sale, the inclusion in a lump sum therein claimed to be due of taxes which have been delinquent for less than three years prior to the service of the notice, renders the notice invalid and a tax deed issued thereon void. *Loy, for Use and Benefit of Union Securities Co. v. Kessler,* 76 N.D. 738, 39 N.W.2d 260;

Knowlton v. Coye, 76 N.D. 478, 37 N.W.2d 343; McDonald v. Abraham, 75 N.D. 457, 28 N.W.2d 582; Robertson v. Brown, 75 N.D. 109, 25 N.W.2d 781; Baeverstad v. Reynolds, 73 N.D. 603, 18 N.W.2d 20; Kelsch v. Miller, 73 N.D. 405, 15 N.W.2d 433, 155 A.L.R. 1186; Grandin v. Gardiner, N.D., 63 N.W.2d 128.

■ The inclusion of the 1936 and 1937 taxes in the notice of expiration of the period of redemption issued in connection with the property involved in this action clearly renders it void. Bowman County never acquired any title to the property by virtue of tax proceedings taken. The deed to it dated March 1, 1940, is void. Consequently the plaintiff did not acquire any equitable interest in the property under and by virtue of the contract for deed entered into between him and Bowman County on December 5, 1952.

While the plaintiff has been in possession of the premises since December 5, 1952, under his contract for deed, which constitutes color of title, his adverse possession thereof is not of sufficient duration under any of the statutes of limitations mentioned and set forth by the parties, unless the possession of the premises by Bowman County through its tenant, Ivan McGee, the plaintiff in this action, constitutes a part of the period upon which title by adverse possession may be claimed. It is strenuously argued and maintained that Bowman County held the title to the land involved adversely to the former owner. The purported tax title was taken by Bowman County while John Tellers, Jr., was alive. If the procedure did not, as we have determined, terminate his rights, upon his death his heirs, consisting of his widow and children, became owners of the property as tenants in common. Stevahn v. Meidinger, 79 N.D. 323, 57 N.W.2d 1; Ellison v. Strandback, N.D., 62 N.W.2d 95; Frandson v. Casey, N. D., 73 N.W.2d 436. We need not consider all the contentions advanced in support of the theory that Bowman County held title to the premises for such period as enables it and its purchaser to claim title as to them by adverse possession under Section 47-

0603, NDRC 1943. Neither do we need to determine whether the possession of Bowman County under its alleged title and the possession of the plaintiff under the contract for deed may be tacked to the purported title of Bowman County as provided by Chapter 276 of the 1951 Session Laws. The contention that a tax title held by a county constitutes adverse possession has recently been disposed of by this court in the case of Wittrock v. Weisz, N.D., 73 N.W.2d 355, 359. We quote from that case:

"Since the County on March 1, 1940 took tax deed, which we find was valid on its face, to these lands there have consistently been in force certain laws with additional privileges granted by the legislature as a matter of grace, in that these laws provided that the former owner and others mentioned therein, should during all of the time that the County held title under a deed valid on its face, have a right to repurchase the land in the various ways provided therein. See 1939 Session Laws, Chapter 238; 1941 Session Laws, Chapter 286, subsections 18 and 19; 57–2818 and 57–2819 NDRC of 1943. These rights are valuable ones and cannot be ignored. Knowlton v. Coye, supra. The former owner or others as mentioned therein, have the privilege, in the various ways as provided for, to come in and repurchase lands forfeited to the county under tax deed proceedings so long as the tax title thereto remains in the County, and further provides that their rights are not cut off when the county desires to sell said lands at private sale until the county gives 30 days written notice to the former owner of its intention to sell and that during said 30-day period the right to repurchase continues to their benefit. This right is inconsistent with adverse possession.

"The rule is elementary that possession to be adverse, must not only be under claim of right, but hostile to and inconsistent with the possession, or right of possession of the true owner.

152

The owner of lands in question had a right to repurchase them at any time while the county had possession thereof and before the 30-day notice was given. Therefore possession in the County from March 1, 1940 to November 16, 1943, being the date 30 days after notice of intention to sell was given, was not adverse but subject to and consistent with the right of the plaintiff."

■ Under the holding in that case, the tax deed of Bowman County, although color of title, was not adverse to the owner or owners of the land from March 1, 1940 to December 5, 1952. At all times after the purported tax deed he or his heirs had the right to redeem under the terms of Section 57–2818, NDRC 1943 and also the right to repurchase under Section 57–2819, NDRC 1953 Supp.

■■ The plaintiff asserts that the title of the defendant intervenors is barred by the statute of limitations in that neither the defendant intervenors nor their ancestors, predecessors or grantors were seized or had possession of the premises in question within twenty years before the commencement of this action. This contention was not urged on oral argument nor is it referred to in the briefs. It must therefore be deemed abandoned. In any event the facts show that John Tellers from whom the defendant intervenors derived title was seized of the premises within twenty years. He held the legal title at the time that Bowman County attempted to take the property for taxes in 1939 and 1940.

■ It is also contended that Section 28–0122, NDRC 1943 is applicable to bar the assertion of title by the answering defendants. Section 28–0122, NDRC 1943 provides:

"An action for relief not otherwise provided for must be commenced within ten years after the cause of action shall have accrued."

In the case of Wittrock v. Weisz, supra, this court said:

"To determine whether or not that statute [referring to 28–0122] applies it is necessary to determine whether or not the county after taking tax deed and before giving notice of sale held adversely to the plaintiffs. We do not believe it did."

It has thus been determined that if a county cannot hold adversely to the former owner or owners, the above section is not applicable to the period after taking the tax deed and before giving the notice of sale. If this section were applicable and the former owner neglected to bring an action or assert his title for more than ten years against a county holding possession of real property under a tax deed valid on its face, such owner or owners would be barred from asserting title, and yet if the county did not dispose of the land, such owner or owners would have the privilege to redeem under Section 57–2818, NDRC 1943, or repurchase under Section 57–2819, NDRC 1953 Supp. The application of this statute of limitations would be inconsistent with these rights. It can, therefore, have no application while the county holds title. Any other holding would render the additional privilege of redemption or repurchase by the former owner or owners after the running of the statute wholly ineffective and unavailable.

■ It is also contended that aside from the statute of limitations laches constitutes a bar to the heirs of the former owner in asserting title to the property; that the rise in values of the property since Bowman County took tax title thereto and since the plaintiff acquired a lease thereon and made the purchase thereof would render it inequitable and unjust to allow the owners to recover the property. The mere increase in value of the property from the time that Bowman County asserts title thereto on March 1, 1940, to the time of the institution of this action is not such as to make it unjust or inequitable to allow the

owners of the property to recover it. In the case of Strom v. Giske, N.D., 68 N.W.2d 838, 847, this court said:

"The change in the status of the parties as claimed by the defendant Olaf Giske, is that the discovery of oil in the vicinity of the land in question greatly enhanced its value, and that it would be inequitable and unjust to permit the plaintiffs to prevail in this action. However, the discovery of oil was not the result of any effort or activity on the part of the defendant Giske. Whatever sums he may have expended in improving the land during his occupancy thereof may be easily ascertained so that he can be compensated therefor and thus be restored to his former status."

The land in question is pasture and grass land. There is no testimony to show that it has been improved in any manner. If as a result of the discovery of oil in North Dakota the value of the land has increased, the delay of the owners in asserting their title to the premises has not in any way changed the status of the parties. None of the well recognized elements of laches discussed in the Strom v. Giske case, supra, are applicable here.

"Laches does not arise from delay or lapse of time alone, but party against whom laches in asserting title to realty is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against party who in good faith permitted his position to become so changed that he could not be restored to his former state." Syllabus 8, Wittrock v. Weisz, N.D., 73 N.W.2d 355, 356.

The defendant intervenors asserted their right to the premises involved before the period of the statutes barred their rights, and before any circumstances by way of delay or laches made it unjust or inequitable that they prevail in this action.

We now turn our attention to the contention that the assertion of title by the defendant intervenors for themselves and for the use and benefit of J. S. Martin constitutes champerty and maintenance.

On the 26th day of January 1953, Agnes Schwartz Tellers as the surviving spouse of John Tellers, Jr., deceased, and Caspar Tellers, Kenneth Tellers, and Agnes Tellers as guardian of the estate of Martin Tellers, Phyllis Tellers, and Lois Tellers, minors, entered into an agreement to sell a regular oil and gas lease and a 15/16ths mineral deed to J. S. Martin of Fort Worth, Texas. The agreement covered the land involved in this litigation. The $160 recited as the consideration for a 15/16ths interest of the minerals was to be paid upon the completion of a good and marketable title to the land. In addition thereto the second party, J. S. Martin, agreed to redeem and perfect the title and restore the same to the Tellers and agreed to pay all expenses, attorneys fees and costs that would be required to vest title in them; and that said expenses would be a further consideration for the oil and gas lease and the mineral deed.

It is conceded that J. S. Martin, either himself, or through an agent, examined the records in the office of the Register of Deeds of Bowman County, and after ascertaining the state of the title contacted the Tellers at their home in Minnesota and procured from them an oil and gas lease dated January 26, 1953, covering the land in question. This lease is signed by Agnes Schwartz Tellers, Caspar Tellers, and Kenneth Tellers. In addition thereto the same parties executed a mineral deed to J. S. Martin for a 15/16ths interest in and to all of the oil, gas, casing head gasoline and other minerals in and under and that may be produced from the land in question.

The defendant intervenors answered the plaintiff's complaint denying the allegations thereof and asserting their title as the heirs of John Tellers, Jr., deceased. The parties later stipulated that the heirs of John Tellers, Jr., deceased, be substituted as defendants. The court by order dated May 19, 1953, ordered that the Tellers be joined as defendants in the action and be substituted as the surviving heirs of John Tellers,

Jr., deceased, who was named as a defendant in the quiet title action. Thereafter the defendant intervenors made an application for leave to amend their answer and with the application served an amended answer. On July 27, 1954, the court by written order allowed the defendant intervenors to file the proposed amended answer and counterclaim as their amended answer and counterclaim in this action. The amended answer and counterclaim recites:

"That the said Agnes Schwartz Tellers, Caspar Tellers, Kenneth Tellers, Gordon Tellers, Lois Tellers and Phyllis Tellers are the owners in fee simple of the premises above described, but subject to the interests of the Defendants and Intervenors and J. S. Martin, and that this action is brought for the purpose of determining adverse claims by said parties named for themselves and for the use and benefit of J. S. Martin."

The title of the action was amended accordingly.

It further appears that on or about the 21st day of September, 1954, the defendant intervenors, as plaintiffs, instituted an action to quiet title to the premises against Ivan McGee, County of Bowman, W. M. Spellisy, and J. S. Martin. That action apparently involved the mineral deed and the oil and gas lease heretofore mentioned. However, whatever difficulties existed with reference to the oil and gas lease and the mineral deed were apparently settled and the action has never been concluded. One of the attorneys appearing for the Tellers in said action joined in and participated in the trial of this action. He and an associate attorney appearing for the Tellers individually entered into a stipulation with the attorneys appearing for the Tellers for themselves and for the use and benefit of J. S. Martin, under date of September 9, 1954. That stipulation provided that in the event the Tellers in both capacities should be successful in recovering title to the land, then and in that event the court was authorized and requested by all the parties, that is the Tellers, to enter judgment and decree that the title to the surface of the land be decreed to Agnes Schwartz Tellers, Caspar Tellers, Kenneth Tellers, Gordon Tellers, Lois Tellers and Phyllis Tellers, surviving heirs of John Tellers, Jr., and that the title in and to all of the oil, gas, casing head gas, casing head gasoline and other minerals in and under the same shall be decreed in the following amounts to the following parties, to wit: an undivided $110/160$th interest in Agnes Tellers, Caspar Tellers, Kenneth Tellers, Gordon Tellers, Lois Tellers, and Phyllis Tellers, surviving heirs of John Tellers, Jr., and an undivided $50/160$th interest in J. S. Martin. The stipulation also provided that an oil and gas lease "is hereby created" by Agnes Tellers, Caspar Tellers, Gordon Tellers, Lois Tellers and Phyllis Tellers as lessors to J. S. Martin as lessee, and then recites the conditions and provisions thereof, and that it shall be binding upon all who execute it, whether or not all parties are named in the granting clause. This stipulation also recites that J. S. Martin "has procured" from Agnes Schwartz Tellers, surviving spouse of John Tellers, Jr., deceased, Caspar Tellers, Kenneth Tellers, and Agnes Tellers, as guardian of the estates of Gordon Tellers, Phyllis Tellers and Lois Tellers, minor wards, an oil and gas lease and a mineral deed of $15/16$ths interest in and to the property described in the action. In the body of the provisions of the oil and gas lease incorporated in the stipulation it is stated that the Tellers "are the owner of an undivided $110/160$ths interest of the minerals upon said land, and J. S. Martin *is the owner* of an undivided $50/160$ths interest of the minerals upon said land * * *."

At the time of the trial of this action the defendant intervenors were, under the agreement with J. S. Martin, maintaining their defense and counterclaim to the action for themselves and for the use and benefit of J. S. Martin.

The plaintiff respondent contends that the original agreement was void under the terms of Section 12–1714, NDRC 1943, and that by the stipulation this void agreement was confirmed, ratified and the champertous nature thereof renewed.

The modification of the original agreement between the Tellers and J. S. Martin shows that the Tellers have granted and Martin received a present vested interest in the real property of the Tellers and that they are enforcing the same for themselves and for his use and benefit. This conclusion is further substantiated by the fact that the mineral deed was recorded in Bowman County, North Dakota, on April 6, 1953.

 The plaintiff acknowledges that even though land is sold in violation of Section 12-1714, NDRC 1943, nevertheless the purchaser may recover title thereto by bringing an action in the name of the grantor for the use and benefit of the grantee. Galbraith v. Payne, 12 N.D. 164, 96 N.W. 258, Loy, for Use and Benefit of Union Securities Co. v. Kessler, 76 N.D. 738, 39 N.W.2d 260, and authorities therein cited. This last case comprehensively traces the history of the development of the rule announced in Galbraith v. Payne, supra. It would serve no purpose to attempt to add thereto. The rule has become a fixed rule of real property law in this state. Where the rule is well known and has been acted on and established for a long time, it would be injudicious to make a change even though the court might reach a different conclusion if this matter were before it for the first time. Horton v. Wright, Barrett & Stilwell Co., 43 N.D. 114, 174 N.W. 67; Loy, for Use and Benefit of Union Securities Co. v. Kessler, 76 N.D. 738, 39 N.W.2d 260. Whether we agree with the underlying philosophy of the rule thus announced is immaterial here. The significant fact is that no attempt has been made to change the rule by legislative action although the opinion in Galbraith v. Payne, supra, was filed July 1, 1903.

 Under the rule thus announced this court has approved the right of a grantee whose conveyance is in violation of Section 12-1714, NDRC 1943 to institute the action asserting his title in the name of the grantor. Here the mineral interest and the oil and gas lease interest of J. S. Martin are being asserted by the grantors for themselves and for the use and benefit of the grantee.

 But it is contended that the agreement was an executory contract and comes within the terms of Section 12-1719, NDRC 1943. That section provides:

"Every attorney and other person prosecuting a suit or demand in person, who, either directly or indirectly, buys or is interested in buying any evidence of debt or thing in action with intent to bring suit thereon, is guilty of a misdemeanor."

As already indicated, the facts here show that the parties to the agreement and the modification thereof have completed the terms thereof except for the payment of the litigation expenses involved by the defendant intervenors. The mineral deed and the oil and gas lease were delivered to J. S. Martin. They were in his possession at the time of trial and are introduced as exhibits in this case. The stipulation modifying the original agreement recites that J. S. Martin "has procured * * * a lease for oil and gas and a mineral deed * * *." The agreement is not executory. It has been practically completed and performed. J. S. Martin had purchased and been granted by the Tellers an interest in real property, an oil and gas lease, Petroleum Exchange v. Poynter, N.D., 64 N.W. 2d 718, and a mineral deed, which is also an interest in real property.

In the case of Northwestern Improvement Co. v. Morton County, 78 N.D. 29, 47 N.W. 2d 543, this court held that after severance, the surface and minerals are held by separate and distinct titles in severalty, and each is a freehold estate of inheritance.

"A mineral deed is one which involves a severance, from the fee, of a present title to minerals in place; * * * it is a realty conveyance." 58 C.J.S., Mines and Minerals, Sec. 150, p. 302.

The purchase of these real property interests by J. S. Martin do not come within Section 12-1719, NDRC 1943. The plaintiff cites the case of Sailer v. Mercer County, 77 N.D. 698, 45 N.W.2d 206, 22 A.L.R.2d 988, in support of his contention. But the facts and circumstances there involved are entirely different. There Mr. Sailer pur-

chased an assignment of a mortgage and notes accompanying it and had the assignment thereof run to Albert Miller as assignee, who in turn entered into an agreement with Mr. Sailer for the purchase of the mortgage and the notes for a consideration of $700 to be paid upon procurement of sheriff's certificate, and agreed to immediately commence a foreclosure proceedings thereon. The mortgage was foreclosed and Mr. Sailer bid it in and received a sheriff's certificate. Under the facts and circumstances set forth in the opinion this court held that the transaction came within the terms of Section 12–1719, NDRC 1943, and that the purchase was made with the intent to bring suit thereon contrary to the provisions of said section.

Also cited in this connection is the case of Patterson Land Co. v. Lynn, 27 N.D. 391, 147 N.W. 256, 262. It is true that in that case Section 8739 of the Revised Code of 1905 (now Section 12–1719, NDRC 1943) is mentioned. But the statement with reference thereto is clearly obiter dictum. The court had already announced its decision, and then added:

"As we have already reached the conclusion that he [referring to Lynn] was debarred from obtaining title hostile to that held by Emmons county, this paragraph can be considered merely as strengthening the conclusion, already announced, that Lynn was estopped from acquiring or asserting an interest in the premises adverse to the county of Emmons or its grantees. [Citation of several cases.] Not only was Lynn forbidden under those authorities to acquire a title hostile to Emmons county and its grantees, but he was forbidden under the statutes of the state from making such purchases. See sections 8732, 8733, 8739, and 8744, R.C.1905; * * *."

It will also be noted in that case that the grantors to Mr. Lynn were not parties to the suit, and made no complaint. The decision of the court is based primarily on the fact that the defendant was an involuntary trustee for the benefit of Emmons County and its grantors and under the circumstances disclosed by the facts was estopped from acquiring a hostile title to Emmons County. None of the syllabi of the court refer to the discussion in the case above quoted.

 That case is not in point upon the issues involved here. Here we have the situation that the litigation is being conducted in the name of the owners as grantors for themselves and for the use and benefit of the purchaser of the mineral interest and the oil and gas lease. He is not conducting the action directly. There is also to be considered that the purchase and procurement of the mineral deed and the oil and gas lease do not constitute any evidence of "debt" or a "thing in action" under the statute. The interest in the land of J. S. Martin constitutes an interest in real property. Debt in its ordinary legal sense is an obligation arising out of contract express or implied which entitles the creditor unconditionally to receive from the debtor a sum of money which the debtor is under legal, equitable, or moral duty to pay without regard to any future contingency. 26 C.J.S., Debt, p. 2.

" 'The term "choses in action" is one of comprehensive import. It includes the infinite variety of contracts, covenants, and promises which confer on one party a right to recover a personal chattel or a sum of money from another by action.' Sheldon v. Sill, [8 How. 441, 449] 49 U.S. 441, 449, 12 L.Ed. 1147; Coler v. Grainger County, 6 Cir., 74 F. 16, 21, 20 C.C.A. 267; Simons v. Ypsilanti Paper Co., C.C., 33 F. 193, 194; Mexican Nat. R. Co. v. Davidson, 157 U.S. 201, 15 S.Ct. 563, 564, 39 L.Ed. 672." 7 Words and Phrases, Chose in Action, p. 167.

 The contract between the Tellers and J. S. Martin dealt with neither a debt nor a thing in action and is not within the terms of this section. No argument is made that the contract falls within Section 12–1716, NDRC 1943. Such contention must, therefore, be deemed abandoned.

It is very strenuously and sincerely urged that the transaction between the Tellers and Martin is of such a nature as to be injurious to the public good or against the public interest and, therefore, contrary to public policy. General statements of law are cited in support of this contention. It is a sufficient refutation to this argument to state that the contract between the Tellers and Mr. Martin may be enforced for themselves and for the use and benefit of J. S. Martin under a long line of decisions recognized by this court. Galbraith v. Payne, 12 N.D. 164, 96 N.W. 258; Loy, for Use and Benefit of Union Securities Co. v. Kessler, 76 N.D. 738, 39 N.W.2d 260, and authorities therein cited. The statute thus construed is not contrary to public policy. By approval of this procedure this court has so determined.

The judgment of the trial court is reversed.

BURKE, C. J., and GRIMSON, MORRIS and SATHRE, JJ., concur.