Francis SABOT, Plaintiff and Appellee,

v.

Gladys Sabot FOX, Lavern Sabot (Swearinger) Weber, Patricia Backer, Doris Sabot Mowder, Bevajean Sabot Hoffman, Russell Sabot, and Jack Fox, and all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the Complaint, Defendants and Appellants,

Paul Sabot, Virgil Sabot, Darrell Sabot, and Donald Sabot, Defendants.

Civ. No. 9511.

Supreme Court of North Dakota.

Nov. 28, 1978.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for plaintiff and appellee; argued by Irvin B. Nodland, Bismarck.

William R. Mills, Bismarck, for defendants and appellants.

PEDERSON, Justice.

This is an appeal by children of Emil and Francis Sabot from a judgment quieting title to real estate in Francis Sabot. We affirm.

In 1944 and 1956 Francis and Emil Sabot purchased real estate in joint tenancy. Emil died in 1957 and his will was probated without objections from either Mrs. Sabot or her children. In the will, Emil reserved a life estate in the joint tenancy property to Mrs. Sabot and granted a remainder to the children. The joint tenancy property was specifically included in the final decree of Emil's estate to be distributed as Emil had directed in his will.

During probate proceedings, all of the parties signed documents captioned, "Appearance and Waiver of Service and Citation." This document provides:

"I [respondent], one of the above named respondents, do hereby certify that I am over the age of twenty one years and that I have not been declared to be incompetent, and

"I do hereby enter my general appearance in said case and probate proceedings, and in every step and portion thereof, and I do hereby waive service upon me of any and all notices, citations, and processes, in connection with was [sic] estate, and

"I do hereby submit to the jurisdiction of said court in said estate matter, and specifically request and consent that the final report and accounting of the executor, and his petition for distribution, to be hereafter filed, be allowed and approved as filed, *and do hereby consent to the same, and to the distribution of the assets of said estate in keeping with the terms of the will,* hereby ratifying and confirming all of the acts of the executor, and of the court, which are made in keeping with said will and the implementation thereof." [Emphasis added.]

The Sabot children allege that by executing the appearance and waiver, Mrs. Sabot consented to distribution of the joint tenancy property in accordance with Emil's will. They assert that this document was intend-ed by the parties as an "agreement" for the distribution of Emil's estate to avoid a will contest.

We are not confronted with a situation in which the devisees seek to enforce, by specific performance, a contract to make a will. *O'Connor v. Immele,* 77 N.D. 346, 43 N.W.2d 649 (1950). Although Mrs. Sabot requested her husband to devise certain real property to their sons, there is no evidence that the couple entered into an agreement to devise their property in a particular manner. Mrs. Sabot was not apprised of the contents of Emil's will until it was probated.

It is not disputed by the parties that Mrs. Sabot and her husband acquired title to the property in joint tenancy. Upon the death of one joint tenant, the title to the joint tenancy property vests immediately in the surviving joint tenant. *Cranston v. Winters,* 238 N.W.2d 647, 651 (N.D.1976). The joint tenancy interest passes to the remaining joint tenant by right of survivorship. It does not pass by will because the joint tenant who dies leaving a surviving tenant has no interest which he may devise. *In re Kaspari's Estate,* 71 N.W.2d 558, 564 (N.D. 1955).

■ Because Emil had no interest in the joint tenancy at the time of his death, any attempt by him to devise the property was a nullity. At Emil's death, fee simple ownership vested in Mrs. Sabot. She did not, by signing the appearance and waiver, relinquish any claim to her interest in this property because it did not pass to her by the decree of distribution.

In all actions tried before the court the findings of fact "shall not be set aside unless clearly erroneous." Rule 52(a), NDRCivP. We will not reverse the district court unless we have a definite and firm conviction that a mistake has been made. *In re Estate of Elmer,* 210 N.W.2d 815, 820 (N.D.1973). The trial court found no evidence to support the assertion that by signing the appearance and waiver Mrs. Sabot intended to alter title to her property to avoid a will contest. Our review of the evidence does not lead us to a different

conclusion. The appearance and waiver neither refers to specific property nor contains language of conveyance. Although it is possible for devisees to execute an agreement for distribution of an estate, there is nothing to suggest that by signing the appearance and waiver Mrs. Sabot assigned, relinquished or otherwise altered her interest in the joint tenancy.[1] The appearance and waiver is not a contract enforceable against Mrs. Sabot in the manner contended by the children.

■ The Sabot children allege principles of equitable estoppel as a defense to Mrs. Sabot's action to quiet title. Although a party can be estopped from asserting title to real estate, the following criteria must be met to successfully allege this defense:

> "'[F]irst, that the party making the admission by his declaration or conduct was apprised of the true state of his own title; second, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; third, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge, and, fourth, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved.'" Cranston v. Winters, 238 N.W.2d at 652, supra, quoting Boggs v. Merced Mining Co., 14 Cal. 279, 367–368 (1859).

The testimony of Mrs. Sabot at trial reveals that she was not aware of the true state of her title. Although Mrs. Sabot admitted that she knew her name was on the title to the property, we cannot conclude from her testimony that she understood that the title was in joint tenancy. As we stated in Sittner v. Mistelski, 140 N.W.2d 360, 368 (N.D.1966):

> "We cannot expect this farm wife, inexperienced in business and unfamiliar with

probate and real estate law, to know the true state of the title to land, when none of the lawyers or the county judge concerned with the probate sale knew the title's true state."

Mrs. Sabot did not question the inclusion of the joint tenancy property in Emil's estate because she had no reason to do so. She was not the personal representative of the estate. Her son, Paul Sabot, carried out these duties. Mrs. Sabot relied upon the attorney for Emil's estate and the county judge to properly probate Emil's will.

There has been no evidence presented to support a contention that Mrs. Sabot intended to deceive her children. There is no evidence that she acted with careless or culpable negligence, necessary to establish constructive fraud. The Sabot children could have determined the true state of the title to the property in question. A party who does not take advantage of public records cannot claim estoppel against another party who fails to furnish information on the status of his title. Narveson v. Schmid, 77 N.D. 814, 46 N.W.2d 288, 294 (1951), citing 31 C.J.S. Estoppel, § 71, p. 272; 31 C.J.S. Estoppel, § 99, p. 321. The Sabot children had access to the record of title to this property, examination of which would have disclosed ownership in joint tenancy.

The Sabot children have made no showing that they have been injured as a result of quieting title in Mrs. Sabot. The contention that the Sabot children gave up a "right" to contest the will on grounds of undue influence or lack of Emil's capacity to make a will is without merit. There is nothing to suggest that they would have succeeded if they had contested the will on these grounds.

■ The Sabot children next contend that Mrs. Sabot is barred by laches from asserting fee simple ownership. Our court has set out the essential elements of the doctrine of laches:

---

1. Section 30–21–20, NDCC, provided: "If all the heirs, legatees, or devisees interested in an estate agree in writing upon a distribution and partition of the estate or the residue thereof, the county court upon the filing of such agreement may partition and distribute the estate accordingly."

This section was repealed by § 82, Ch. 257, S.L.1973. This provision has been incorporated into § 30.1–20–12, NDCC.

"Laches does not arise from mere delay or lapse of time. In addition to the time element, the party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and fail to assert them against a party who has in good faith permitted his position to become so changed that he cannot be restored to his former state." *Adams v. Little Missouri Minerals Association*, 143 N.W.2d 659, 667 (N.D.1966), quoting *Larson v. Quanrud, Brink & Reibold*, 78 N.D. 70, 47 N.W.2d 743 (1951). Moreover, "[t]he defense of laches is based principally upon the inequity of permitting a claim to be enforced due to change of conditions of the parties because of such delay." *Richland County v. State*, 180 N.W.2d 649, 657 (N.D.1970).

Because Mrs. Sabot did not learn of her title to the property until 1975, she is not barred from asserting her claim by the doctrine of laches. There is no evidence to support a finding that the Sabot children, to their detriment, have changed their position upon reliance that Mrs. Sabot held a life estate rather than a fee simple ownership.

█ The Sabot children contend that this action is res judicata by the decree of distribution of the county court. The probate court does not have jurisdiction over a determination of the rights in property left by a deceased where these rights do not depend upon the will but upon contract. *Riebe v. Riebe*, 252 N.W.2d 175, 178 (N.D. 1977), citing *O'Connor v. Immele*, 43 N.W.2d at 651, *supra*. As a defense to quieting title in Mrs. Sabot, her children seek to enforce Emil's will through an alleged contract for distribution contained in the appearance and waiver. Any claim that the Sabot children have to a remainder interest must depend upon the enforceability of the appearance and waiver, and not upon the decree of distribution entered by the county court.

Because the property was owned in joint tenancy it did not come within the jurisdiction of the county court in probating Emil's estate. This action is not res judicata nor is this action a collateral attack upon the decree of the county court. For general rules applicable to the doctrine of res judicata see *Dolajak v. State Auto. & Cas. Underwriters*, 252 N.W.2d 180, 182–183 (N.D.1977).

█ Finally, it is alleged that the statute of limitations bars the action by Mrs. Sabot to quiet title. Section 28–01–15, NDCC, provides in part:

"The following actions must be commenced within ten years after the cause of action has accrued:

"1.   .   .   .

"2. An action upon a contract contained in any conveyance or mortgage of or instrument affecting the title to real property   .   .   ."

Section 28–01–15, NDCC, does not apply to this action. An action to quiet title is a statutory procedure by which adverse claims to real property are settled. Section 32–17–01, NDCC. It is not an "action upon a contract" referred to in § 28–01–15(2), NDCC. The general statute of limitations contained in § 28–01–22, NDCC, likewise does not apply to an action to quiet title. These statutes of limitations do not bar Mrs. Sabot from asserting her claim to this property.

We conclude that Mrs. Sabot did nothing to relinquish or alter her title to the property acquired in joint tenancy. We affirm the judgment quieting title in Mrs. Sabot.

ERICKSTAD, C. J., and PAULSON, SAND and VandeWALLE, JJ., concur.