Betty J. SIMONS, Plaintiff and Appellee,

v.

Martha A. TANCRE, Evelyn F. Stenbak, Duane J. Tancre, Marian A. Nelson, Harold W. Tancre, Sharon A. Ellis, the heirs of Alvin E. Tancre, Deceased, "Adeline Tancre, et al", the heirs of Theresa Labaron, formerly Theresa Tancre, formerly Theresa Larsen, Joe E. Tancre, the heirs of Mamie Tancre Welo, formerly Mamie Tancre, Deceased, Dora Weyrauch, Alice Hartsoch, Williams County, North Dakota, and all other persons unknown claiming any estate or interest in or lien or encumbrance upon the property described in the Complaint, Defendants,

Evelyn F. Stenbak, Duane J. Tancre, Marian A. Nelson, Harold W. Tancre, and Sharon A. Ellis, Defendants and Appellants.

Civ. No. 10119.

Supreme Court of North Dakota.

July 1, 1982.

John H. MacMaster of MacMaster & Bonner, Ltd., Williston, for plaintiff and appellee.

Dean Winkjer of Rolfstad, Winkjer, McKennett, Kaiser, Stenehjem & Walters, P.C., Williston, for defendants and appellants.

PAULSON, Justice.

This is an appeal by Evelyn F. Stenbak, Duane J. Tancre, Marian A. Nelson, Harold W. Tancre, and Sharon A. Ellis, from a judgment of the District Court of Williams County quieting title to real property in Williams County described as the Southwest Quarter (SW ¼) of Section 8, Township 154 North, Range 96 West. The district court decreed that the appellants, the children of Alvin E. Tancre (deceased) and Martha A. Tancre, have an undivided four-fifths interest in such property and that their cousin, the appellee, Betty J. Simons, has an undivided one-fifth interest therein.

The land in question, a sandy, dry quarter in Williams County is commonly referred to as the "Rist" place. William and Adeline Tancre, the grandparents of the parties, received a warranty deed to this land in 1924. William and Adeline Tancre, were the parents of six children, Marvin, Alvin, Theresa, Joe, Mamie, and Isabell. The appellee, Betty Simons, is the daughter of Marvin Tancre and his wife, Mildred. The appellants are the children of Alvin Tancre and his wife, Martha.

William Tancre died intestate in 1933. A final probate decree recorded on July 24, 1934, vested title to the Rist place in the following persons: to Adeline Tancre, an undivided ⁵⁄₃₀ths interest; to William and Adeline Tancre's children (Marvin W. Tancre, Alvin E. Tancre, Theresa Tancre Larsen, and Joe H. Tancre), an undivided ⁵⁄₃₀ths interest; and to William and Adeline Tancre's grandchildren Dora Weyrauch and Alice Hartsoch, the daughters of Mamie Tancre Welo, deceased, an undivided ¹⁄₃₀th interest each.

The records of the Williams County auditor's office show that the land was acquired

by the county on December 11, 1934, for nonpayment of taxes for the year 1933. A tax deed vesting title to the property in the county was recorded on October 30, 1940.

William and Adeline Tancre owned another parcel of land in Williams County, a 160-acre tract commonly referred to as the "home place". On October 7, 1935, several years after her husband had died, Adeline Tancre entered into a written contract with her son Alvin Tancre and his wife Martha wherein Adeline agreed to convey the "home place" to Alvin and Martha in return for their promise to care for her for the rest of her life. Betty Simons testified that a verbal agreement existed between her parents, Marvin and Mildred Tancre, and her grandmother, Adeline Tancre, wherein Adeline agreed to convey the Rist place to Marvin and Mildred in exchange for their promise to care for her.

Adeline Tancre died, intestate, on October 27, 1940. Her interest in the Rist place vested in her surviving children and grandchildren, including Marvin Tancre, the appellee, Betty Simons's father; and Alvin Tancre, the appellants' father.

Alvin Tancre's wife, Martha, testified that she and her husband acquired the Rist place from the county in 1942, after paying the delinquent taxes. On May 29, 1942, Williams County conveyed the subject property, by quitclaim deed, to "Adeline Tancre, et al". In the years that followed, Alvin and Martha Tancre paid the taxes on the property and leased it for farming. Since 1942, either Alvin or Martha or their children have retained the profits, rents, and other income from the land. They also suffered the losses, if any. Neither Alvin nor Martha requested Alvin's brothers or sisters or their children to contribute to the expenses of the farming operation, and none of them volunteered to contribute toward these and other expenses involved.

On October 18, 1952, Alvin Tancre wrote a letter to Mildred Tancre, the widow of Alvin's deceased brother, Marvin, in which Alvin sought Mildred's cooperation in "clearing title on the Rist place".[1] Mildred refused to quitclaim her interest in the Rist place to Alvin. Adeline and William Tancre's other heirs quitclaimed their interests in the Rist place to Alvin and Martha Tancre in 1952. In 1980, Martha Tancre conveyed the Rist place to her children, the appellants, by warranty deed.

Marvin Tancre, Betty Simons's father, died intestate in 1947. His interest in the Rist place passed to his widow, Mildred, and to his four daughters, including Betty Simons, the appellee. In 1952, three of Marvin's daughters, but not including Betty, quitclaimed their interests to their mother, Mildred Tancre. In 1970, Betty's mother conveyed her interest in the Rist place to Betty, by deed. In 1953 Mildred Tancre and her daughter Betty Simons ratified an oil and gas lease to the Rist place which had been made by Alvin and Martha Tancre in 1951. Mildred Tancre received a delay rental payment from Amerada Petroleum Corporation on the Rist land in 1959.

Betty Simons instituted this action to quiet title to the Rist place on October 28, 1980. In their answer, the appellants allege that they "are the only owners of said property to the exclusion of Plaintiff" and all other persons claiming an interest in the property. The appellants contend that their title to the land is based upon the 1980 warranty deed executed to them by their mother, Martha. The appellants also allege

---

1. The letter, in pertinent part, reads:

> "Ray N.D.
> "Oct. 18, 1952
>
> "Dear Sister Mildred:
>
> "We con't seem to be getting along very fast in clearing title on the Rist place. As it stands now no oil Co. will drill on it. If we clear title and they strike oil there will be something in it for all of us.
>
> "When last I talked to you about it, you said you would like to have your share of oil Royalty. Now I have promised you that, and my lawyer will fix up papers so you know and are sure of what you will get.
>
> "All the rest of the Heirs have given quit claim deeds to Martha and I, and are not asking for anything, being I dealt for the land from the county after it had been sold for taxes.
>
> "Well Mildred write and tell what you know or think about the deal. If you think I haven't shot square with you, Tell me that. . . ."

that they acquired title to the property by adverse possession.

The trial court ruled that Alvin and Marvin Tancre and the other heirs of William and Adeline Tancre held the land in 1940 as tenants in common. The court reasoned that these cotenants had the privilege of redeeming or repurchasing the property from the county after the county had acquired tax deed title to the land in 1940. The court held that the repurchase of the land by Alvin in 1942 was for the benefit of the other cotenants.[2] The appellants' contention that they held absolute title to the land by adverse possession was rejected by the trial court.

The chief issue raised in this appeal is whether or not the trial court erred in ruling that the appellants failed to establish absolute title to the land by adverse possession.

A cotenant may hold adversely to his cotenants if his possession is such that it meets the requirements of the law of adverse possession. *Hagen v. Hagen*, 137 N.W.2d 234, 236 (N.D.1965).

The person claiming property by adverse possession by virtue of a title must establish that he, either alone or including those under whom he claims, has been in actual open adverse and undisputed possession for a period of ten years and that he, either alone or including those under whom he claims, has paid all taxes and assessments legally levied thereon for such period. § 47–06–03, N.D.C.C.; *Stoll et al. v. Gottbreht*, 45 N.D. 158, 176 N.W. 932 (1920); *and see* §§ 28–01–08 through 28–01–11, N.D.C.C. [by other means]. The burden of

proof is upon the person claiming title by adverse possession. *Handy v. Handy*, 207 N.W.2d 245 (N.D.1973).

A tenant in common who enters into possession of the common land is presumed to be exercising the rights which he has as a tenant in common, and his possession is presumed to be consistent with the title that he holds as a common tenant. Mere possession itself and the payment of taxes is presumed to be for the benefit of all tenants in common, and the appropriation of rents and profits will not constitute adverse possession on the part of a tenant in common. *Hagen, supra.*

The law recognizes that one cotenant may oust another, but it cannot be done except by acts so distinctly hostile to the rights of others that the intent to dispossess is clear and unmistakeable. *Hagen, supra.* In *Stoll et al. v. Gottbreht, supra* 176 N.W. at 934, Justice Bronson described an "ouster" as:

> "... an emphatic deprivation of the rights of the cotenants as to show either direct knowledge to the other cotenants of such claim, or of circumstances sufficient to establish such knowledge or the means of the knowledge thereof."

The appellants rely on § 28–01–08, N.D.C.C., to support their claim that they have shown the "adversity" necessary to acquire title by adverse possession.[3] Under § 28–01–08, N.D.C.C., continuous occupation and possession of the premises for twenty years under a claim of title, based upon a written instrument (a conveyance of the premises), is deemed to be "adverse". The appellants in the instant case point to

2. The trial court's ruling is consistent with the general rule that the purchase of an outstanding tax deed title to common property by one cotenant inures to the benefit of all cotenants. *See generally Fettig v. Fettig*, 277 N.W.2d 278, 281 (N.D.1979); *Frandson v. Casey*, 73 N.W.2d 436, 444 (N.D.1955); *Stevahn v. Meidinger*, 79 N.D. 323, 57 N.W.2d 1 (1952).

3. Section 28–01–08, N.D.C.C., provides:
   "*28–01–08. Adverse possession when based upon written instrument.*—Whenever it shall appear that the occupant, or those under whom he claims, entered into the possession of premises under a claim of title exclusive of any other right, founding such claim upon a written instrument as being a conveyance of the premises in question, or upon the decree or judgment of a competent court, and that there has been a continued occupation and possession of the premises included in such instrument, decree or judgment, or of some part of such premises, under such claim for twenty years, the premises so included shall be deemed to have been held adversely."

the deeds executed by the heirs of William and Adeline Tancre (excluding Marvin) to the appellants' parents in 1952 as the "claim of title" required by § 28–01–08, N.D.C.C.

Assuming, *arguendo*, that the appellants' possession has been "adverse" within the meaning of § 28–01–08, N.D.C.C., and that they or their predecessors have been in actual open continuous and undisputed occupation and possession of the premises for the statutory period, the evidence still must show an ouster of the rights of the other cotenants. *Hagen, supra.* We have carefully reviewed the record in this case, and have found no evidence of acts so hostile to the rights of others that Alvin's intent to dispossess the other cotenants was unmistakeably clear. Indeed, Alvin's letter to his sister-in-law, Mildred, written on October 18, 1952, discussing "your share of oil Royalty", evinces Alvin's recognition of their status as cotenants. *See* n.1, *infra.*

In *Handy, supra*, the court held that evidence that one of the plaintiffs, the son of the title owner whose estate had never been probated, had possessed the land for 65 years without receiving any demand for a sharing of the rents and profits from the other cotenants, was insufficient to establish an ouster of the other cotenants. In *Hagen, supra*, the court examined the record for evidence to support a claim of title by adverse possession and concluded that all of the acts relied upon by the plaintiff were consistent with his ownership of the property as a tenant in common. The acts relied upon by the plaintiff in *Hagen* were: possession by the plaintiff and his parents for more than the statutory period; a haycutting and farming operation operated by the plaintiff and his parents, and the receipt of the income from this operation; nonpayment of rent; payment of taxes; and a quitclaim deed from the plaintiff's mother. *And see Heggen v. Marentette*, 144 N.W.2d 218 (N.D.1966) [similar facts].

The appellants herein have not introduced any evidence which distinguishes this case in a significant way from *Handy, Heggen*, and *Hagen, supra*. We therefore hold that the trial court was correct in ruling that these appellants failed to establish their absolute title by adverse possession to the Rist place.

The appellants contend that Betty Simons should be estopped from asserting title to the Rist place. They also argue that Betty is barred by laches and unclean hands from asserting her claim.

In *Cranston v. Winters*, 238 N.W.2d 647, 652 (N.D.1976), quoting from *Boggs v. Merced Mining Co.*, 14 Cal. 279, 367–368 (1859), we set forth the law of equitable estoppel:

> " 'It is undoubtedly true that a party will in many instances, be concluded by his declarations or conduct, which have influenced the conduct of another to his injury. The party is said in such cases to be estopped from denying the truth of his admissions. But to the application of this principle with respect to the title of property, it must appear: *first*, that the party making the admission by his declaration or conduct was apprised of the true state of his own title; *second*, that he made the admission with the express intention to deceive, or with such careless and culpable negligence as to amount to constructive fraud; *third*, that the other party was not only destitute of all knowledge of the true state of the title, but of the means of acquiring such knowledge, and, *fourth*, that he relied directly upon such admission, and will be injured by allowing its truth to be disproved.' " [Emphasis in original.]

To establish the defense of estoppel, the appellants point to several exchanges between their parents and Betty's parents: (1) Mildred's remark that Adeline should give Alvin and Martha the Rist place. Martha testified that Mildred made this remark on the day that Adeline entered into the agreement conveying the home place to Alvin and Martha; (2) Marvin's statement, made in 1940, that he was not interested in acquiring the Rist place and Martha and Alvin's reliance upon this statement; and (3) Marvin's statement, made in 1946, wishing Alvin and Martha good luck in paying for the Rist place.

We do not believe that this evidence is sufficient to estop Betty from claiming title to the Rist place. Such benign statements of disinterest and goodwill do not satisfy the requirement that the person to whom the estoppel is to be applied[4] must have "intentionally and deliberately" led the other party to believe a thing to be true. § 31–11–06, N.D.C.C.; *Cranston, supra.*

We also reject the appellants' contention that Betty should be barred from asserting her claim because of laches. Laches is an affirmative defense which must be affirmatively pleaded. Rule 8(c), North Dakota Rules of Civil Procedure. The appellants' answer did not raise this defense and the trial judge did not address this contention. Even if the question had been properly raised, it would be unsuccessful in the instant case.

Laches, generally speaking, is such a delay in enforcing one's right as to work a disadvantage to another. *Frandson v. Casey,* 73 N.W.2d 436, 446 (N.D.1955). In *Sabot v. Fox,* 272 N.W.2d 280, 283 (N.D. 1978), this court set forth the essential elements of the doctrine of laches, quoting with approval from *Adams v. Little Missouri Minerals Association,* 143 N.W.2d 659, 667 (N.D.1966); and *Larson v. Quanrud, Brink & Reibold,* 78 N.D. 70, 47 N.W.2d 743 (1951):

> "Laches does not arise from mere delay or lapse of time. In addition to the time element, the party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and fail to assert them against a party who has in good faith permitted his position to become so changed that he cannot be restored to his former state."

The defense of laches is based principally upon the inequity of permitting a claim to be enforced due to change of conditions of the parties because of such delay. *Sabot, supra.*

Appellants' argument is premised upon the discovery of oil in the Williston Basin; they contend that Betty acted inequitably in waiting to bring this action until the discovery of oil made ownership of the land potentially profitable. In *McGee v. Stokes' Heirs At Law,* 76 N.W.2d 145 (N.D. 1956), the North Dakota Supreme Court rejected a similar contention that an increase in the value of the land, due to the discovery of oil in North Dakota, made it unjust for the owners to claim title. Justice Johnson, writing for the *McGee* court, reasoned that the elements of laches were lacking. He stated, "If as a result of the discovery of oil in North Dakota the value of the land has increased, the delay of the owners in asserting their title to the premises has not in any way changed the status of the parties." *McGee, supra* 76 N.W.2d at 153. In dismissing a similar contention in *Strom v. Giske,* 68 N.W.2d 838, 847 (N.D. 1955), the court noted that, "the discovery of oil was not the result of any effort or activity on the part of the defendant". *See generally, Fettig v. Fettig,* 277 N.W.2d 278 (N.D.1979). There is no evidence to support a finding that appellants or their parents, to their detriment, had changed their position upon reliance that Betty or her parents had no interest in the Rist place.

The appellants' remaining contention, that Betty should not be allowed to assert her interest because of "unclean hands" is without merit.

The judgment is affirmed.

ERICKSTAD, C. J., and SAND, VANDE WALLE and PEDERSON, JJ., concur.

---

4. In this case the appellants are contending that Betty is estopped from claiming an interest in the property because of her parents' actions.