In the Matter of the GEORGE MASSAD TRUST.

James MASSAD, Petitioner-Appellee,

v.

James N. MASSAD, Gemal Massad, Mason Massad, Marlene King, Lester Massad, Jr., June Ortloff, Respondents-Appellees,

Martha Saif, Cecelia Skeyie Massad, and Martha Saif, Personal Representative of the Estate of Anna Massad, Deceased, Respondents-Appellants.

Civ. No. 9544.

Supreme Court of North Dakota.

March 15, 1979.

Rehearing Denied April 12, 1979.

Vogel Law Firm, Mandan, for petitioner-appellee; argued by Lawrence A. Dopson, Mandan.

Reichert, Howe, Hardy, Galloway & Jorgensen, Dickinson, for respondents-appellees Mason Massad, Gemal Massad, and Marlene King; argued by Donald L. Jorgensen, Dickinson.

Alfred C. Schultz, Bismarck, for respondents-appellees Lester Massad Jr., and June Ortloff.

Orrin B. Lovell, Beach, and Harold H. Halstead, Mercer Island, Washington, for respondents-appellants.

PAULSON, Justice.

This case involves two actions against the George Massad Trust which were consoli-

dated and tried before the Stark County District Court. In one action Martha Saif and Cecelia Skeyie Massad, daughters of George and Anna Massad, objected to the final distribution of the George Massad Trust and claimed that they were entitled to certain shares of the assets of the Massad Trust. In the other action, Martha Saif, as Executrix for the Estate of Anna Massad, objected to the final distribution of the George Massad Trust and claimed that the Estate of Anna Massad was entitled to certain income from the Trust, one-half of the bank accounts of the Trust, and certain real property on which the Dickinson Hide & Fur Company is located. The district court denied the claims of Martha and Cecelia and denied the claims of the Estate of Anna Massad. The present appeal was brought to this court by Martha and Cecelia individually and by the Estate of Anna Massad.

An action involving certain claims against the Anna Massad Estate was also tried in the district court with the actions against the George Massad Trust. In that case, Mason Massad, James Massad, and Gemal Massad objected to certain payments made by the Anna Massad Estate. Following a hearing on the matter in county court, the Anna Massad Estate appealed the decision to the district court, and the appeal was consolidated for trial with the primary actions against the George Massad Trust. No appeal has been taken from the district court's decision in the Anna Massad Estate case.

George Massad, the owner of the Dickinson Hide & Fur Company, executed his Last Will and Testament in 1962. One of the provisions in George's will created the George Massad Trust [hereinafter Trust], the assets of which comprised most of his Estate. The Trust was created to provide for the care and support of Anna, George's wife, during her lifetime and on her death was to be distributed to their children, Martha, Cecelia, James, Lester, Gemal, and Mason, in varying amounts.

Pursuant to the will, the Trust was to contain certain United States Government savings bonds, the Massad home, and the Dickinson Hide & Fur Company. On George's death, the Trust was to be distributed according to Paragraph Seventh, subparagraphs 3(a), 3(b), and 3(c), as follows:

"[3] a. my United States Government Bonds:
1—30% to James Massad
2—20% to Lester Massad
3—20% to Gemal Massad
4—10% to Mason Massad
5— 5% to Martha Saif
6— 5% to Cecelia Detwiler [1]
b. Lots 22, 23 and 24, of Block 9, original Plat of Town of Dickinson, Stark County, N. Dak. (our home) to Martha Saif and Cecelia Detwiler in equal shares, share and share alike;
c. all other property of the George Massad Trust
1—45% to Lester Massad plus the operating bank account of Dickinson Hide & Fur Co.
2—25% to James Massad
3—20% to Gemal Massad
4—10% to Mason Massad

.    .    .    .    .

George died on March 27, 1967, and his will was later admitted to probate. The members of the Massad family first learned of the contents of George's will at a family conference with Robert B. Baird, George's attorney, on the day after George's funeral. All family members were present and received copies of the will.

Shortly thereafter, during an inventory of George's assets, it was discovered that the savings bonds listed in Paragraph Seventh, subparagraph 3(a), of George's will were owned in joint tenancy with Anna, and that the home listed in Paragraph Seventh, subparagraph 3(b), was owned solely by Anna. Anna, the surviving joint tenant, became sole owner of the bonds on George's death. Therefore, the home and the bonds were not assets which George could dispose of by his will. *Sabot v. Fox*, 272 N.W.2d 280, 281 (N.D.1978); *Cranston v. Winters*, 238 N.W.2d 647, 651 (N.D.1976); *In re Kas-*

1. Cecelia Detwiler was divorced in 1969 and resumed her maiden name of Massad.

*pari's Estate*, 71 N.W.2d 558, 564 (N.D. 1955).

On May 25, 1967, an inventory of the assets of George's Estate was filed in the County Court of Stark County and copies were given to all of the beneficiaries and interested persons, including Anna and the six Massad children. The inventory listed the bonds as being jointly owned and did not list the home which was owned by Anna.

Martha and Cecelia were to receive nothing under George's will because the property given to them in Paragraph Seventh, subparagraphs 3(a) and 3(b), was not his to bequeath and devise. On July 17, 1968, Anna deeded the family home listed in Paragraph Seventh, subparagraph 3(b), to Martha and Cecelia while retaining a life estate in the home for herself.

After the estate tax returns on George's estate were filed and the taxes were paid, the executors filed a Final Report and Accounting and a Petition for Distribution with the County Court of Stark County. Copies were sent to all interested persons and beneficiaries, including Martha and Cecelia, and they were notified that a hearing would be held in the matter. Martha and Cecelia were present at the hearing on the Final Report and Accounting in the George Massad Estate on September 17, 1969. No objection was made by either Martha or Cecelia and the Final Decree of Distribution in the George Massad Estate was executed on September 18, 1969.

The Final Decree of Distribution of the George Massad Estate activated the George Massad Trust. On September 24, 1969, James Massad was appointed Trustee of the Trust which was to be supervised by the Stark County District Court.

Following several months of negotiations, the Trust sold the Dickinson Hide & Fur Company to Lester Massad on May 28, 1970. The real property on which the business was located was not sold. All members of the family received prior notice of the proposed sale of the business. The April 16, 1970, hearing regarding the sale was attended by most of the family members, including Anna, Martha, and Cecelia. Anna, Martha, and Cecelia were also present at the May 28, 1970, hearing when the sale to Lester was completed.

The Trust continued to exist after the sale of the Dickinson Hide & Fur Company to Lester. The proceeds from the sale of the business were added to the Trust assets, as were the monthly payments made by Lester for rental of the real property used by the Dickinson Hide & Fur Company.

Lester Massad died on September 17, 1970. He was survived by his wife, Evelyn, and his children, Lester Massad, Jr., June Ortloff, and Marlene Igard [also known as Marlene King].

As Trustee, James Massad was required to file annual reports and accounts with the district court. Annual reports and accounts were filed with the district court, hearings were held, and the reports and accounts were approved by the court for the years 1970, 1971, 1972, 1973, and 1974. All interested persons and beneficiaries, including Martha and Cecelia, were given notice of the hearings to approve the annual reports and accounts. Martha and Cecelia attended all annual account hearings and neither of them raised any objection to any of the accounts.

The Sixth Annual Report and Account was prepared on August 13, 1975, but no hearing was held until 1977 because of Anna Massad's death on October 28, 1975. The Sixth Annual Report and Account was filed with the district court on May 19, 1977. Because the George Massad Trust terminated on Anna's death, the Final Report and Account and Petition for Distribution were also filed on May 19, 1977.

A hearing on the Sixth Annual Report and Account, the Final Report and Account, and the Petition for Distribution in the Trust was held on June 9, 1977. Martha and Cecelia filed Objections at the hearing to all six Annual Reports and Accounts, the Final Report and Account, and the Petition for Distribution; and filed Supplemental Objections on July 6, 1977. In their Objections, Martha and Cecelia requested that

the Final Report and Accounting and the Final Decree of Distribution in the George Massad Estate be set aside; that all accounts, reports, and petitions in the George Massad Trust be set aside; that Martha and Cecelia each be awarded one-sixth of the assets of the Trust, the amount which they would have been entitled to had George Massad died intestate, on the ground that they were unintentionally omitted from George Massad's will;[2] that the Trustee and the Trust's attorney be denied compensation; that the claim of Gemal be denied; and that Martha and Cecelia be awarded attorneys' fees, costs, and exemplary damages from the Trustee. Martha and Cecelia contend that the Trust accountings and the distribution of George's Estate should be set aside because the Trustee and the Trust's attorney misled them into believing that they would receive property from George's will when the Trust was distributed and, because they were misled, they failed to contest the distribution of George's Estate in 1969 and the subsequent Trust accountings.

On August 22, 1977, Martha, as Executrix for the Estate of Anna Massad, filed Objections to the Final Report and Account of the Trust. The main contentions of the Anna Massad Estate are that the Trust failed to pay to Anna during her lifetime all of the income to which she was entitled; that Anna's Estate is entitled to one-half of the bank accounts of the George Massad Trust; and that Anna should be declared the equitable owner of the Dickinson Hide & Fur Company real property because she had been led to believe that she was the owner of the real property by relatives, the Trustee, and the Trust's attorney.

Certain claims were also filed by Gemal Massad, Lester Massad, Jr., and June Ortloff. However, no appeals have been taken from the district court's decision regarding their claims.

The Objections by Martha and Cecelia and Anna's Estate were heard in a joint trial on September 13, 1977. Post-trial Supplemental Briefs were filed by the parties and the district court issued its Memorandum Decision on March 16, 1978.

The district court denied the claims of Martha and Cecelia because they had not filed timely appeals from the order admitting George's will to probate or from the Final Report and Account, the Petition for Distribution, or the Final Decree of Distribution of George's Estate. The court also determined that Martha and Cecelia had failed to prove fraud or misrepresentation by the Trustee or the Trust's attorney as a basis for reconsidering the distribution of George's Estate and Trust. Martha and Cecelia brought this appeal from the Judgment, which was entered on May 10, 1978.

In the case involving the claims by the Anna Massad Estate, the court determined in its Memorandum Decision that Anna's Estate was not entitled to any additional income from the Trust for the first five annual accounting periods, because there was no additional income in those years. The court was unable to determine whether Anna's Estate was entitled to additional income from the Sixth Annual Trust Accounting, however, and the court ordered the Trustee to provide a Supplemental Trust Income Report for the period from August 27, 1974, to October 28, 1975, when the Trust terminated.

When the district court executed Findings of Fact and Conclusions of Law and entered its Judgment, however, it approved and allowed "all of the trustee's reports and accounts, including the sixth and final accounts". The district court's Findings, Conclusions, and Judgment supersede its Memorandum Decision. See *Kack v. Kack*, 142 N.W.2d 754, 762 (N.D.1966). Therefore, the district court's Judgment adopting and approving all reports and accounts prevails over its Memorandum Decision which did not adopt the sixth and final accounts.

The district court also denied the claims of Anna's Estate for one-half of the bank

2. Several alternative claims for relief, which need not be discussed, were also included in Martha and Cecelia's Objections.

accounts of the Trust and the Dickinson Hide & Fur Company real property. After deducting Trust expenses, the court awarded the value of the operating bank account to Lester's children, Lester, Jr., June, and Marlene. The remaining Trust assets, cash and the real property, were awarded as follows:

| | |
|---|---|
| 15% to Lester, Jr.; | 25% to James; |
| 15% to June; | 20% to Gemal; and |
| 15% to Marlene; | 10% to Mason[3] |

The following issues have been raised for appeal:

1. Did the district court err in determining that Martha and Cecelia were not entitled to share in the distribution of the George Massad Trust?

2. Did the district court err in determining that the Estate of Anna Massad was not entitled to income from the George Massad Trust during the first six annual accounting periods, one-half of the bank accounts received from the George Massad Estate, or the real property associated with the Dickinson Hide & Fur Company?

In determining whether Martha and Cecelia are entitled to share in the distribution of the Trust, we must consider the timeliness of their appeal. Chapter 30–26, N.D.C.C., governs the procedure for taking appeals from county court probate proceedings.

Section 30–26–01, N.D.C.C., provides:

"*By whom and from what appeals may be taken.*—Any party to a proceeding in county court, including a claimant whose claim has been rejected in whole or in part,. or any other person specified in section 30–26–02, who deems himself aggrieved by a decree or any order affecting a substantial right made by a county court, may appeal to the district court of the same county."

Section 30–26–02, N.D.C.C., provides:

"*Parties to appeal.*—Each person who was a party to a proceeding in the county court, and each other person who has or claims in the subject matter of a decree or order made by the court a right or interest which is affected by an appeal, must be made a party to the appeal."

Section 30–26–03, N.D.C.C., provides:

"*Appeal—How taken.*—To effect an appeal, the appellant must cause a notice of the appeal to be served on each of the other parties and must file such notice with the proofs of service, and an undertaking for appeal, in the county court, *within thirty days* from and after the date of the order or decree. If the party taking an appeal files such notice and announces the filing orally in open court at the time the decision is given, no other or further service of the notice is necessary." [Emphasis added.]

Pursuant to §§ 30–26–01, 30–26–02, and 30–26–03, N.D.C.C., any party to a probate proceeding or any person who claims an interest in an estate that is being probated in the county court may appeal to the district court from a decree or an order affecting a substantial right within thirty days after the date of the decree or order. See *Schulz v. Saeman*, 150 N.W.2d 67, 69–70 (N.D.1967).

In the present case, Martha and Cecelia, although they were named and served notice as respondents, made no objections to the Final Report and Account or Final Decree of Distribution in the George Massad Estate at the hearing which was held on September 17, 1969. Martha and Cecelia failed to appeal the distribution of the Estate to the district court within thirty days. They filed Objections in the district court in the matter of the George Massad Estate on July 6, 1977, more than seven years after the time for appeal had expired.

Martha and Cecelia contend that they failed to file a timely appeal because the Trustee and the Trust's attorney, Robert B.

---

3. Marlene, the daughter of Lester, Sr., disclaimed her share of the Trust. Because the disclaimer was disputed by a creditor, the district court prepared alternative distribution plans for the property awarded to Lester, Jr., June, and Marlene, to take effect if the creditor successfully contested Marlene's disclaimer.

Baird, fraudulently misled them into believing that they would receive shares of the George Massad Estate when the Trust was distributed upon Anna's death. Even though Martha and Cecelia failed to file a timely appeal, we must determine whether their failure to file resulted from fraud by the Trustee and the Trust's attorney.

The district court made the following Findings of Fact regarding fraud and the failure of Martha and Cecelia to file a timely appeal.

### "FINDINGS OF FACT

#### "I.

"That the Respondents, Martha Saif and Skeyie Massad,[4] have not shown any fraud, conspiracy, misrepresentation, mismanagement or undue influence on the part of the Trustee or his counsel or others involved in these proceedings in any matters involving the George Massad Estate or the George Massad Trust.

#### "II.

"That no appeals were filed from the proof and probate of the Will of George Massad or from the Final Report and Account and Distribution of the George Massad Estate."

The district court's finding of fact that Martha and Cecelia failed to prove fraud, conspiracy, misrepresentation, mismanagement, or undue influence by the Trustee or the Trust's attorney must be analyzed in accordance with Rule 52(a) of the North Dakota Rules of Civil Procedure. A trial court's finding of fact will not be reversed on appeal unless it is found to be clearly erroneous. *State v. Livingston*, 270 N.W.2d 556, 557 (N.D.1978); *Gardebring v. Rizzo*, 269 N.W.2d 104, 111 (N.D.1978); *Enstad v. N. Cent. of Barnes Pub. Sch., Etc.*, 268 N.W.2d 126, 135 (N.D.1978); *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973).

During the oral argument, the attorneys for Martha and Cecelia conceded that no actual fraud had been committed by the Trustee and the Trust's attorney. They did contend, however, that constructive fraud had been committed against their clients. Section 9–03–09, N.D.C.C., defines "constructive fraud", as follows:

"*'Constructive fraud' defined.*—Constructive fraud consists:

1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him, by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

2. In any such act or omission as the law specially declares to be fraudulent without respect to actual fraud."

Under § 9–03–09(1), N.D.C.C., which is applicable to the present case, the Trustee and the Trust's attorney, in order to be found to have committed constructive fraud, would need to have misled Martha and Cecelia to their prejudice. *See Adams v. Little Missouri Minerals Association*, 143 N.W.2d 659 (N.D.1966); *Fire Ass'n of Philadelphia v. Vantine Paint & Gl. Co.*, 133 N.W.2d 426, 431–432 (N.D.1965).

A perusal of the record indicates that Martha and Cecelia were not misled by the Trustee or the Trust's attorney regarding the distribution of their father's Estate. Martha and Cecelia were present at the reading of George's will, received copies of the will, and received copies of the Estate inventory. The inventory did not list the home which was owned solely by Anna but did list the Government savings bonds as jointly owned by George and Anna. Martha and Cecelia also received notice of all hearings involving the Estate and Trust and attended all of the hearings.

Neither Martha nor Cecelia objected to the Final Decree of Distribution or Petition for Distribution of the George Massad Estate. The Final Decree of Distribution did not include the home and the bonds, the only property that Martha and Cecelia were designated to receive under the will. Furthermore, the home had already been deed-

---

4. Cecelia is sometimes referred to by her middle name, Skeyie.

ed by Anna to Martha and Cecelia before the George Massad Estate was distributed in September of 1969. Therefore, Martha and Cecelia should have known that they were to receive nothing under George's will.

Martha and Cecelia rely heavily on the contention that they were misled into believing that they would receive a share of the George Massad Estate because they were referred to as beneficiaries [5] on some Estate and Trust documents. This contention is without merit. Because Martha and Cecelia were listed as beneficiaries in the will, they were entitled to receive notice of all proceedings in the matter. It would have been improper had Martha and Cecelia not been given notice of all proceedings. *See Sturdevant v. SAE Warehouse, Inc.,* 270 N.W.2d 794, 796–799 (N.D.1978). Even though Martha and Cecelia were listed as beneficiaries, circumstances regarding the probate of the Estate should have placed them on notice that they were not entitled to shares of the George Massad Estate.

At the trial Martha testified that neither James, the Trustee, nor Robert B. Baird, the Trust's attorney, had ever told her that she would receive anything under the will. At the trial she was asked:

"Q  Isn't it true at that time that Mr. Baird told you that you would not receive any property?"

To which question she responded:

"A  He might of did, but, I didn't believe it because I didn't think my dad would lower himself to not giving me anything."

The record also reveals that when Martha was asked:

"Q  . . .  when the Will was read to you you were aware of the fact that the Will didn't provide anything for you?",

that she responded:

"A  Yeah, I thought there was something funny in there."

When asked how the Trustee had misled her, Martha responded:

"A  They tried to tell us we didn't have nothing coming, but we know different."

Martha also testified that she had told Baird that she was going to get a lawyer to try to get some wages from George's Estate and that Baird had advised her to do so.

Cecelia testified at trial that Baird had not told her that she would receive anything under George's will and that no one else had told her that she would receive any property from George's Estate, other than the savings bonds and the home. She also testified that she knew that the home was not part of George's Estate.

Cecelia further testified that she had formerly believed, and still believed at the time of trial, that she would receive something under George's will. The validity of this testimony is questionable because Cecelia failed to deny that she had stated under oath in a divorce case deposition in 1969 that she was not going to inherit anything under George's will. Cecelia claimed that she could not remember testifying that she would inherit nothing from George's Estate.

We conclude that the record, including the testimony of Martha and Cecelia, amply supports the district court's finding of fact that Martha and Cecelia had not been the victims of any fraud or misrepresentation and had not been misled by the Trustee or the Trust's attorney. Because Martha and Cecelia were not misled, there was no constructive fraud. We further conclude that the district court's Finding of Fact No. I was not clearly erroneous, pursuant to Rule 52(a) of the North Dakota Rules of Civil Procedure.

Because we have determined that no fraud or misrepresentation was committed against Martha and Cecelia, we conclude that Martha and Cecelia's failure to file an appeal within thirty days bars them from attacking the Final Decree of Distribution in the George Massad Estate, both having been given notice of the distribution hearing. Martha and Cecelia are also barred from attacking the annual accountings and the distribution of the George Massad Trust.

---

**5.** Some documents listed Martha and Cecelia as beneficiaries or interested parties.

■ Martha and Cecelia have also requested that the Trustee and the Trust's attorney be denied compensation and that Martha and Cecelia be awarded attorneys' fees, costs, and exemplary damages from the Trustee. Because Martha and Cecelia are barred from reopening the distribution of the George Massad Estate and from attacking the George Massad Trust, we conclude that they have no standing to raise any additional claims against the Estate or the Trust.

We hold that Martha and Cecelia are not entitled to any shares of the George Massad Estate or Trust. We further hold that Martha and Cecelia are not entitled to any other requested relief involving the George Massad Estate or Trust.

The second issue in this case involves the claims by the Anna Massad Estate against the George Massad Trust for additional income, one-half of the bank accounts, and the Dickinson Hide & Fur Company real property. Anna's Estate also requested attorneys' fees, costs, exemplary damages, $2,640.41 for taxes which Anna paid on the Dickinson Hide & Fur Company real property, and that the Trustee be required to be individually obligated to pay for attorneys' fees and costs for which the Trust should not have been responsible.

■ The attorneys for Anna's Estate provided this court with a detailed accounting of the Trust in an attempt to prove that the accountings adopted by the district court were erroneous. However, the information was not introduced in the trial and it is not part of the record before us on appeal. We will only consider the record established in the district court in determining whether the Trust was administered properly.

A perusal of the record indicates that the evidence amply supports the district court's determination that there was no additional income to be paid to Anna during the entire period of the Trust's existence. The district court's finding was not clearly erroneous pursuant to Rule 52(a), N.D.R.Civ.P. In addition, Anna never objected to the first five Trust reports and accounts even though she had received notice of all five hearings. Furthermore, the record does not reveal that Anna was fraudulently misled into failing to contest the reports and accounts. We affirm the district court's decision that Anna's Estate is not entitled to any additional income from the Trust.

■ Anna's Estate, in its pleadings, claimed that it is entitled to one-half of the bank accounts of the George Massad Trust. On appeal, Anna's Estate also requested that the claim by Lester Massad, Sr.'s, children for the Hide & Fur operating bank account be denied. After reviewing George's will we can find no basis for either claim. George's will placed most of his property in the Trust which was to provide Anna with care, support, and maintenance during her life from either Trust income or principal. On Anna's death, the remainder of the Trust was to be distributed to the children in varying shares. According to the will, neither Anna nor Anna's Estate is entitled to receive any of the bank accounts and Lester, Sr., was entitled to the Hide & Fur operating bank account.

We conclude that, pursuant to George's will, Anna's Estate is not entitled to one-half of the Trust's bank accounts. We further conclude that the children of Lester, Sr., are entitled to $37,619.97, the value of the operating bank account of the Dickinson Hide & Fur Company upon the death of George Massad.

■ Anna's Estate claims that it should be declared to be the equitable owner of the Hide & Fur real property because Anna was misled into believing that she owned the real property. A review of the record fails to show that Anna was misled into believing that she owned the real property on which the Hide & Fur was located. When the Dickinson Hide & Fur Company business was sold to Lester, Sr., by the Trust in 1970, Anna attended all hearings in the matter and testified regarding the value of the business. At the time she knew that Lester, Sr., was going to buy only the business from the Trust, not the real property on which it was located. Following the sale, Lester paid rent for the real prop-

erty to the Trust, not to Anna individually. Even though Anna's will purported to devise the property in the event that she had not disposed of it prior to her death, the record fails to show that she was misled into believing that she actually owned the property.

We conclude that Anna's Estate is not entitled to the Dickinson Hide & Fur Company real property.

The requests made by Anna's Estate for attorneys' fees, costs, exemplary damages, reimbursement for taxes paid by Anna, and that the Trustee be individually obligated for attorneys' fees and costs, are also denied.

The record indicates that Anna paid the 1970 and 1971 taxes on the Hide & Fur real property. On appeal, the attorneys for Anna's Estate, in an alternative prayer for relief, claimed that the Trust was responsible for the taxes for those two years and that the Trust should reimburse Anna's Estate for $2,640.41, the amount of the 1970 and 1971 taxes plus interest. However, this court will not consider this claim because it was not raised in the pleadings or during the trial before the district court.

In summary, we hold that Martha and Cecelia are not entitled to shares of the George Massad Estate or Trust, attorneys' fees, costs, or exemplary damages.

We further hold that Anna Massad's Estate is not entitled to income from any of the accounting periods of the Trust; one-half of the bank accounts of the Trust; the Dickinson Hide & Fur Company real property; attorneys' fees, costs, exemplary damages, or reimbursement of taxes paid by Anna; and that the Trustee is not individually obligated for attorneys' fees and costs. We also hold that the district court did not err in determining that the children of Lester, Sr., are entitled to $37,619.97, the value of the Hide & Fur operating bank account on George's death.

The decision of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.