**BAUKOL–NOONAN, INC., Plaintiff and Appellee,**

v.

**Enid BARGMANN, formerly Enid Gullickson, Individually and as Trustee of the trust created under the Last Will and Testament of Samuel Henderscheid, Sr., Deceased, and as Executrix of the Estate of Warren Henderscheid, Deceased, Samuel Henderscheid, Jr., and Waldo B. Henderscheid, Defendants, Cross-Claimants, and Appellees,**

v.

**Marion J. MONAHAN, Ruth Bigelow, Gretchen Ward, Maude Carole Jensen, formerly Maude Carole Eckenrode, Beverly Robinson, Michelle Weigant, Bonnie Goodman, and Barbara Donahue, Defendants, Cross-Claimants, and Appellants.**

Civ. No. 9566.

Supreme Court of North Dakota.

Aug. 2, 1979.

Rehearing Denied Aug. 22, 1979.

 

Nevin Van de Streek of Eaton & Van de Streek, Minot, for plaintiff and appellee; submitted brief without oral argument.

Orville A. Schulz, New Salem, for defendants, cross-claimants, and appellees.

Peter S. Pantaleo of Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for defendants, cross-claimants, and appellants.

VANDE WALLE, Justice.

The plaintiff, Baukol-Noonan, Inc., the lessee under a coal lease from Samuel Henderscheid, Sr., instituted an action in district court naming the heirs of Samuel, Sr., as defendants, and requested the court to construe the terms of a trust created under the will of Samuel, Sr., in order to determine which of the defendants are entitled to receive payments called for under the lease. Certain defendants cross-claimed against other defendants. The district court, after trial without a jury, quieted title in one defendant, Samuel Henderscheid, Jr., and barred the claims of all other defendants. We affirm.

In 1960, Samuel, Sr., and his wife, Maude, as lessors, entered into a coal lease with certain lessees whose rights under the lease were subsequently assigned to Baukol-Noonan. Samuel, Sr., died in September 1969, leaving the following children: Enid Gullickson Bargmann, Ruth Bigelow (stepdaughter), Marion Monahan, Gretchen Ward, Maude Carole Jensen, Samuel Henderscheid, Jr., Warren Henderscheid, and Waldo Henderscheid. A stepdaughter, Naomi, his daughter Harriet, and his wife, Maude, predeceased him. Beverly Robinson, Michelle Weigant, Bonnie Goodman, and Barbara Donahue are granddaughters of Samuel, Sr., and daughters of Harriet Frady, deceased daughter of Samuel, Sr.

Samuel, Sr.'s, will provided, insofar as is pertinent:

"Second, I give, devise and bequeath to ENID GULLICKSON, as trustee, for the use and benefit of my sons, WARREN HENDERSCHIED [*sic*] and SAMUEL HENDERSCHIED [*sic*], JR., the follow-

ing real estate: The South Half (S.½) of Section Four (4), the Southeast Quarter (SE¼) of Section Nine (9), the East Half (E½) of Section Three (3) and the Southwest Quarter (SW¼) of Section Three (3), all in Township One Hundred Forty-one (141), North of Range Eighty-four (84), West of the Fifth P.M. in Oliver County, North Dakota, subject, however, to a life interest in my wife, MAUDE HENDERSCHIED [sic], for so long as she lives.

"Third, I give, devise, and bequeath to ENID GULLICKSON, as trustee, for the use and benefit of my sons, WARREN HENDERSCHIED [sic] and SAMUEL HENDERSCHIED [sic], JR., all of my farm machinery of every nature and description, to them and their heirs forever.

I give, devise and bequeath all the rest and residue of my property of every nature and description, not heretofore willed to anyone under my Last Will and Testament, to my wife, MAUDE HENDERSCHIED [sic], and to my daughters, MARION MONAHAN, GRETCHEN WARD, HARRIET FRADY, MAUDE CAROL ECKENRODE, ENID GULLICKSON and my step-daughter, RUTH BIGELOW, in the following proportions, to-wit: Twenty five (25) percent of said property to my wife, MAUDE HENDERSCHIED [sic], and the remaining seventy five (75) percent to be divided equally among my daughters and stepdaughter.

"I nominate and appoint ENID GULLICKSON to be the executrix of this my Last Will and Testament.

"I am not unmindful of my son, WALDO B. HENDERSCHIED [sic], but having deeded land to him during his lifetime, I direct that he is not to take any thing under this Will."

Enid Gullickson remarried after the execution of the will and is now known as Enid Bargmann. Samuel, Sr.'s, wife, Maude, predeceased him, so her life estate in the real property did not vest. At the time that the will was read, Waldo Henderscheid realized that the description of real proper-

ty devised in trust to Warren and Samuel, Jr., omitted two quarters of land that Samuel, Sr., owned, and included one quarter that he did not own. He mentioned the omission of the two quarters and the inclusion of the unowned quarter to those present at the reading of the will. It is the omitted two quarters that we are concerned with on this appeal.

Samuel, Sr.'s, will was subsequently admitted to probate and the final decree of distribution was entered in October 1971. The final decree included in the real property held by Enid as trustee for Warren and Samuel, Jr., the two quarters omitted from the will and excluded the one quarter included in the will but not owned by Samuel, Sr. All parties involved in the present proceedings had executed an appearance-and-waiver-of-notice form in which they waived the "service of any and all papers and notices which would otherwise be required to be given in the course of the administration of the estate . . ." and any right "to appeal from the order or decree allowing the final report and accounting," and consented to the entry of the final decree of distribution "immediately upon the approval of such final report and accounting." No appeal was taken from the final decree of distribution entered by the county court.

Subsequently, in March 1975, Warren died, leaving a will in which he devised to Samuel, Jr., all of his property, including a one-half undivided interest in the real property devised to him by Samuel, Sr. Some of the parties to the present action signed waiver forms, but other parties refused to sign such forms. In September 1976, the county court entered the final decree of distribution declaring Samuel, Jr., as the owner of all the property described in Warren's will. No appeal was taken from the final decree of distribution entered by the county court.

In November 1976 Baukol-Noonan instituted this action pursuant to Rule 22, N.D. R.Civ.P., and Section 32–11–02, N.D.C.C., to determine the interests in the coal leases that it held relative to the real property in dispute. Marion, Ruth, Gretchen, and

Maude Carole filed an answer and counter-claim in which they alleged that the real property owned by their father, Samuel, Sr., was, by the terms of his will, to be held in trust for the use and benefit of their brothers Samuel, Jr., and Warren, and that they signed the waiver of appearance and notice without knowing there were two quarters omitted from their father's will. They cross-claimed alleging that they held an interest in the two omitted quarters. Enid, Samuel, Jr., and Waldo answered and cross-claimed, alleging that Samuel, Jr., was the owner of all the real property, including the two omitted quarters, that the interests of the parties had been judicially determined by the county court in the final decree of distribution, that the time for appeal had expired, and that the matter therefore was res judicata. They further alleged that there was a consent and waiver on the part of the other defendants and denied the existence of any interests in the real property in the other defendants. Each group of defendants answered the cross-claim of the other group.

The trial court issued a memorandum opinion and findings of fact, conclusions of law, and order for judgment incorporating therein the findings in the memorandum opinion. The trial court concluded (1) that the final decree of distribution entered in the estate of Samuel, Sr., in October 1971 was res judicata with respect to the title to the real property at issue; (2) that because the will of Samuel, Sr., gave the trustee of the testamentary trust no powers and duties and because the beneficiaries have exercised the right to possession and the profits from the trust assets to the exclusion of the trustee, a passive trust, or dry trust, was created in which the legal estate was deemed to be co-extensive with the beneficial estate; (3) that the beneficial interest in the trust held by Samuel, Jr., and Warren was the equivalent of a fee simple with the brothers as tenants in common; and (4) that because Warren died and the final decree of distribution in his estate transferred an undivided one-half interest in the premises to Samuel, Jr., Samuel, Jr., is now the owner of the premises and the claims of all defendants are barred.

After judgment was entered, Marion, Ruth, Gretchen, Maude Carole, Beverly, Michelle, Bonnie, and Barbara appealed to this court, presenting the following issues:

"1. Is the attempt of [the appellants] to have title to certain parcels of real estate quieted in them, a collateral attack upon the probate decree in Samuel Henderscheid, Sr.'s estate.

"2. When a final decree of probate is in conflict with the clear terms of decedent's will regarding the distribution of certain real property, which instrument governs.

"3. May a final decree of probate devest [sic] devisee of his interest."

Appellants urge that previous decisions of this court indicate that a quiet-title action is not an infringement upon the prerogatives or judgments of a county court in a probate proceeding. They cite *Cathro v. McArthur,* 30 N.D. 337, 152 N.W. 686 (1915), and *Hoffman v. Hoffman's Heirs,* 73 N.D. 637, 17 N.W.2d 903 (1945). *Cathro* concerned a quiet-title action in which the administrator of the estate executed a mortgage that was subsequently purchased by one of the defendants at a foreclosure sale. The plaintiff claimed title under an alleged redemption from that foreclosure sale. The defendant (appellant) claimed that the plaintiff had no interest in the property that would entitle him to redeem. Prior to the foreclosure proceedings the plaintiff, following the proper procedures, had purchased the property. However, the appellant claimed that errors in the description of the property in the probate court proceedings were jurisdictional and that the plaintiff acquired no title in those proceedings. The court held that because the heirs had executed and delivered quitclaim deeds to the property to the plaintiff and because at the death of the intestate the title held by him immediately vested in his heirs at law, such heirs could transfer their interests to the plaintiff and that this established sufficient interest in the property in the plaintiff to enable him to redeem from the mortgage. Appellants in this case rely

upon the statement of the court that the property vested in the intestate's heirs at his death [30 N.D. at 341, 152 N.W. at 687] as indicating that a quiet-title action may be instituted after probate proceedings are completed to challenge those probate proceedings. But the court in *Cathro,* disposing of the question of the sale of the property by the administrator in the probate proceedings, stated:

"It is contended by appellant, however, that such errors in the description were jurisdictional, and therefore could not be corrected so as to pass title to the plaintiff. Such contention we think is unsound. The county court obtained jurisdiction upon the filing of a proper petition (section 7895, R.C.1905) and any errors in the description in subsequent proceedings would, we think, constitute irregularities only *which could not be challenged except by a direct attack.* [Citation omitted.] Furthermore under sections 7955 and 7956, R.C.1905, the county court had ample authority to correct such irregularities." [Emphasis supplied.] 30 N.D. at 340–341, 152 N.W. at 687.

In *Cathro* the court cited with approval *Jetter v. Lyon,* 70 Neb. 429, 97 N.W. 596 (1903), which held that an action in ejectment may be maintained by the heirs of a decedent and that heirship may be established by methods other than proceedings in a probate court. We have examined the opinion in *Jetter* and do not find it applicable. In that case the defense to the action of ejectment was that the only competent proof of heirship was a finding and judgment of heirship by the probate court. The Nebraska court rejected that contention, and stated that heirship could be determined by other methods, and indicated that a person may establish ownership to real estate as the heir of a deceased person even when there were no probate proceedings. Furthermore, the court in *Jetter* found that the record did establish probate proceedings.

In relying upon *Jetter* for the proposition that a person may establish heirship without probate proceedings, the court in *Cathro* stated:

"Section 8159, R.C.1905, which is similar to the Nebraska statute, expressly authorizes the heirs to maintain an action for the possession of the real estate, or for the purpose of quieting title to the same, against any one except the executor or administrator. If appellant's contention is sound, the heirs who have not been determined by a decree of heirship would be powerless to redeem from a mortgage foreclosure or execution sale, and they might therefore be divested of all interest in the property before a decree of heirship could be obtained. Such is clearly not the law." 30 N.D. at 342, 152 N.W. at 687.

We do not find the decision in *Cathro* applicable to this case because it involved intestate proceedings in the county court, whereas we are here involved with a will; there was no dispute among the heirs to the proceedings in *Cathro,* but rather a dispute with a person not an heir, whereas we are involved with a dispute among the heirs named in a will; the decision clearly reveals that the county court had jurisdiction; *Cathro* involved methods of establishing heirship where probate proceedings had not been instituted or completed; and, most important, *Cathro* involved the question whether or not a person redeeming from a mortgage foreclosure sale had sufficient interest in the property to entitle him to redeem.

The appellants also refer this court to *Hoffman v. Hoffman's Heirs, supra.* In that case the plaintiff instituted a quiet-title action to determine certain claims to real property that had been the subject of probate proceedings in various other States. The plaintiff had introduced evidence of probate proceedings from the other States to substantiate her allegation, made in her complaint, as to the transfer of interest to her. Despite this, the trial court dismissed the action, holding that, while it was ostensibly an action to quiet title, it was in fact an action to effect probate proceedings and that the probate court in North Dakota had jurisdiction. This court, on appeal, held

that upon the death of an intestate or testator, his realty passes immediately to his heirs, subject to the control of the county court and to the possession of any administrator or executor appointed by the court. The court also noted that even where the estate is in the progress of administration, an heir may bring such an action and that such an action would not interfere with the exclusive original jurisdiction of the county court in probate and testamentary matters as conferred by Section 111 of the North Dakota Constitution. We do not find *Hoffman* applicable, however, because it did not involve a situation in which, after the probate court had entered its decree, a quiet-title action was brought in an attempt to have the district court review and reverse or modify that decree. Furthermore, the plaintiff in *Hoffman* had introduced evidence from probate proceedings in other States that substantiated the claim made in her complaint.

*Belakjon v. Hilstad,* 76 N.D. 298, 35 N.W.2d 637 (1949), also cited by appellants, is similarly distinguishable on its facts. It involved a quiet-title action, and no probate proceedings had been instituted. This court held that the title to real estate descends immediately and directly to the heirs of an owner who dies intestate, and that when no probate proceedings have been instituted, the heirs may maintain an action for rents or for the value of the use and occupation of such real estate accruing after the death of the ancestor. The facts in *Belakjon* are substantially different from those with which we are concerned. Here, there has been a probate proceeding, and the quiet-title action is for the purpose of attacking the validity of that proceeding.

At the time of the probate proceedings of Samuel, Sr.'s, will and the entry of the final decree of distribution in 1971, Section 111 of the North Dakota Constitution vested exclusive original jurisdiction in probate and testamentary matters in the county court.[1]

This court, in recent decisions, has held that the failure to file an appeal from a final decree of distribution within the time specified bars a party to the probate proceedings from attacking the final decree of distribution if he received notice of the distribution hearing. See, e. g., *Matter of George Massad Trust,* 277 N.W.2d 269 (N.D. 1979). In *Sturdevant v. SAE Warehouse, Inc.,* 270 N.W.2d 794 (N.D.1978), this court noted that a decree of the probate court is res judicata as to parties to the proceedings. In that case, because plaintiff had not been made a party to the probate proceedings, we held that the final decree of distribution was not res judicata as to him and that he was not estopped from bringing suit in district court.

In *Manikowske v. Manikowske,* 136 N.W.2d 465, 477 (N.D.1965), this court discussed the effect of a final decree of distribution in a probate proceeding in county court:

"Under the provisions of Section 111 of the Constitution, the county court is vested with exclusive jurisdiction in probate and testamentary matters. In the absence of an appeal or contest within the statutory time, an order of the county court admitting a will to probate becomes final, conclusive, and immune to collateral attack. It is of equal rank with a judgment entered by other courts of record in this State. [Citations omitted.]

"If the county court made a mistake in a matter over which it had exclusive jurisdiction and no appeal was taken, its decision has become final. The mistake cannot be corrected in a collateral action in the district court."

In an earlier case, *In re Le Page's Trust,* 67 N.D. 15, 269 N.W. 53 (1936), this court stated:

"The county court determines by its final decree who are entitled to the estate

---

1. In 1976, Section 111, N.D.Const., was repealed and Section 85, N.D.Const., was enacted, which provides for the judicial power of the State to be vested in a unified judicial system consisting of a supreme court, a district court, and such other courts as may be provided by

law. The county court still exists as a court provided by law with jurisdiction over probate and testamentary matters. See Chap. 27–07, N.D.C.C.; *State ex rel. Agnew v. Schneider,* 253 N.W.2d 184 (N.D.1977).

and their portions. Section 8849, Comp. Laws. The judgment upon the final accounting is of equal rank with a judgment entered in other courts of record in this state, and is conclusive against collateral attack except on jurisdictional grounds and those of collusion and fraud." 67 N.D. at 21, 269 N.W. at 55. See also *Joy v. Elton,* 9 N.D. 428, 83 N.W. 875 (1900).

■ We cannot conclude that the appellants' counterclaim in this matter is anything other than a collateral attack on the final decree of distribution of the probate court. The appellants were parties to the actions and signed appearance and waiver forms.[2] That decree is now res judicata and it cannot be collaterally attacked in this action.

Because of our conclusions it is perhaps unnecessary to discuss further the action of the probate court and the final decree of distribution in Samuel, Sr.'s, estate. Appellants, however, appear to conclude as a matter of law that an error was made by the probate court in including in the trust property the two omitted quarters of land. There was an admitted ambiguity in Samuel, Sr.'s, will. That ambiguity probably existed not so much because of the omission of two quarters of property from specific devise as by the inclusion of a quarter of land which Samuel, Sr., did not own. In *In re Le Page's Trust, supra,* this court stated:

"Where the construction of the will is necessary to distribute the estate to the parties entitled thereto, it is clear the county court would be required to construe the will; but its jurisdiction is limited to what is necessary to administer the estate. . . .

"The legal existence of the trust takes effect and validity from the proof of the will and the right of the trustee to receive the trust fund is derived from the decree of the county court. [Citation omitted.] Consequently, in this case it was the duty of the county court to determine in the first place that a trust was created by the will, *to ascertain the amount of property involved in the trust,* and at the proper time to decree that this trust property be delivered to the trustee 'subject to and upon the trusts imposed * * * under the conditions of the will.' "[3] [Emphasis supplied.] 67 N.D. at 22, 269 N.W. at 55-56.

The authority of the county court to construe the terms of an ambiguous will was again stated in *Graves v. First National Bank in Grand Forks,* 138 N.W.2d 584 (N.D. 1965), wherein we said:

"[T]he county court has jurisdiction, not only to construe an ambiguous will in aid of administration of an estate, but to determine the validity of a part or all of a will when such a determination is necessary for the proper administration of the estate in county court." 138 N.W.2d at 588.

■ Because there was an error in the will concerning the description of the property to be included in the trust, we believe the county court could have found that the will was ambiguous and that the county court therefore had the authority to construe the will as it did in aid of administration of the estate.[4]

2. Although the appellants' answer alleges that they signed the appearance-and-waiver forms on advice of the attorney for the estate in the belief that the will provided that all of the estate of their father was to be held in trust for the use and benefit of Warren and Samuel, Jr., and that they did not know they might have had an interest in the two omitted quarters, they did not contend in district court that the appearance-and-waiver forms were invalid, nor have they urged that position on appeal.

3. The decision also permitted an action in district court concerning the supervision and administration of the trust because the district court, and not the county probate court, has jurisdiction of the supervision and administration of the trust. We are not here concerned with that issue.

4. The district court did not decide this question but, in its memorandum opinion made a part of its findings by reference, points out several facts in support of the county court's action, including:

"(1) It is obvious that the testator made a mistake in that he described a quarter he did not own and had never owned;

"(2) That quarter was in the same section as an omitted quarter;

Finally, Baukol-Noonan, the only party to raise the issue, argues that this court may determine that the trust established by Samuel, Sr.'s, will is an active trust and not, as the trial court found, a passive trust, or dry trust. Baukol-Noonan's argument is intriguing. Baukol-Noonan concedes that the district court decision was "compelled by the statutory and case law in the State of North Dakota that was actually brought to [its] attention by counsel at the trial level." In essence, Baukol-Noonan argues that the decision in *Smith v. Security Loan & Trust Company,* 8 N.D. 451, 79 N.W. 981 (1899)—holding that under the provisions of what are now Sections 59–03–04 through 59–03–07, N.D.C.C., a deed that contained language almost identical to the language of Samuel, Sr.'s, will did not vest any title or estate in the trustee, but rather operated to convey the whole estate, both legal and equitable, to the named beneficiaries— should be re-examined by this court. It argues that Section 59–03–06,[5] N.D.C.C., should require the court to look beyond the face of the instrument, and that the court in *Smith* did not express an absolute refusal to look beyond the face of the trust instrument itself. Thus, Baukol-Noonan reasons, if we look beyond the terms of the will itself, the evidence discloses that the named beneficiaries of the trust created by the will were two sons who had suffered some degree of mental impairment as the result of childhood diseases; that at least one of the men was considered to be incompetent to handle his own affairs (although no guardian has ever been appointed); and that Enid, the trustee, took some part in managing their affairs. It then concludes that Enid's title was not merely nominal but, rather, was connected with some power of actual disposition or management over the trust.

■ A review of the memorandum decision of the trial court, however, belies this conclusion. The trial court discussed the activities of Enid as trustee and found that she never had taken exclusive possession of the property or profits and acted only as an advisor to Warren and Samuel, Jr. These are findings which could be set aside only if we found them to be clearly erroneous. Rule 52(a), N.D.R.Civ.P.

Furthermore, Baukol-Noonan points out a provision in Section 59–03–02, N.D.C.C., which was not brought to the trial court's attention but which was added to that statute in 1967:

"No trust relating to real property shall fail nor shall any use relating to real property be defeated because no beneficiaries are specified by name in the recorded deed of conveyance to the trustee or because no duties are imposed upon the trustee, notwithstanding the provisions of sections 59–03–04 and 59–03–05. . . ."[6]

---

"(3) That the entire farm had always been a farm unit on which Warren and Sam lived with their father to his death and helped with farm work;

"(4) The obvious mistake in including a non-owned quarter would indicate it was a mistake in descriptions to leave out two quarters;

"(5) During his lifetime, he declared to the only two witnesses that testified in this case that he was concerned about Sam and Warren ending up on welfare and wanted them to have the farm and the girls to have the money;

"(6) The will leaves all farm machinery in trust to the two epileptic sons, supporting the conclusion he intended they have the entire farm, including all land;

"(7) At the will reading, throughout the probate, and for several years afterward, none of the defendants in Group B raised any questions or objection;

"(8) At the will reading, all daughters and stepdaughter acquiesced in the conclusion that testator made a mistake and intended the farm to go to Sam and Warren in trust;

"(9) The matter was again brought to their attention during the probate of Warren's estate in 1975, and again no action was taken."

---

**5.** Section 59–03–06, N.D.C.C., provides:

"The provisions of sections 59 03–04 . . . do not divest the estate of any trustee in a trust, if the title of such trustee is not merely nominal, but is connected with some power of actual disposition or management in relation to the real property which is the subject of the trust."

**6.** Baukol-Noonan also points out the provisions of Section 59–04–15, N.D.C.C.:

"Every act of the trustee in contravention of the terms of the trust and statute shall be absolutely void except where the district court

 Baukol-Noonan then argues that if the trust were determined to be an active trust the only issue remaining would be the determination of the exact beneficial interest obtained by the beneficiaries and what ought to happen to the property at the time the trust is terminated. It argues that we should conclude that the named beneficiaries of the trust were to receive a life estate as tenants in common and that the testator, by operation of law, died possessing a reversionary interest, which is an asset of his estate subject to probate. That argument was considered by the trial court in its memorandum opinion:

> "In a portion of its brief, Plaintiff raises the question that perhaps Sam and Warren were only given a life estate in trust and that the remainder would pass under the residuary clause. This contention is res judicata due to the decree and frankly is not supported by the facts."

In addition, the trial court found that the land and income has always been treated as belonging to Samuel, Jr., and Warren; that upon Warren's death it was treated as his property and devised in his will; and that there was no appeal from the final decree of distribution in Warren's estate. Insofar as the establishment of a trust is a question of fact rather than a question of law, we are bound by Rule 52(a), N.D.R.Civ.P., which provides that findings of fact shall not be set aside unless clearly erroneous.

 Because Baukol-Noonan was the only party to advance this issue and because Baukol-Noonan is not the prime party in interest, the record on this issue is scant. We cannot state that the decision of the trial court—that the facts do not support a conclusion that Warren and Samuel, Jr., received only a life estate—is clearly erroneous. In any event, Baukol-Noonan's argument that the trust was an active trust and not a passive trust, or dry trust, is not properly before us because Baukol-Noonan has not appealed the district court's judgment.

Insofar as the property was devised by Warren's will, which was admitted to probate, and because a final decree of distribution was entered from which no appeal was taken, we agree with the trial court that the issue is res judicata.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.

having jurisdiction and supervision of the administration of such trust, by order, on notice and hearing as provided in this chapter, shall authorize any such trustee to sell, mortgage, pledge, lease, or otherwise dispose of or invest trust property in such manner as best may accomplish the object and purpose of the trust, where it is made to appear to the satisfaction of the court that such order is necessary and for the best interests or benefit of the trust estate or person or persons beneficially interested therein, or who thereafter may acquire an interest therein, and where it is further established to the satisfaction of the court that the trust instrument is lacking in specific and adequate directions as to the disposition or investment of trust property, or that strict compliance with the terms of such instrument will tend to destroy the trust estate or create losses of principal or income."