John TKACH, Jr., Plaintiff
and Appellee,

v.

AMERICAN SPORTSMAN, INC., and
Richard K. Burtness, individually,
Defendants and Appellants.

Civ. No. 10022.

Supreme Court of North Dakota.

March 11, 1982.

Chapman & Chapman, Bismarck, for defendants and appellants; argued by Daniel J. Chapman, Bismarck.

Lundberg, Conmy, Nodland, Lucas & Schulz, P. C., Bismarck, for plaintiff and appellee; argued by A. William Lucas, Bismarck.

PAULSON, Justice.

American Sportsman, Inc. and Richard K. Burtness appeal from the judgment of the District Court of Burleigh County entered on March 25, 1981. We affirm.

In the fall of 1977, American Sportsman and John Tkach, Jr., entered into a lease agreement which provided that American Sportsman would lease a commercial building owned by Tkach for a five-year period commencing October 1, 1977, with a monthly rental of $1,389.59. The lease was reduced to writing and forwarded to American Sportsman's attorney, but was not signed until early summer in 1979. At that time, Burtness signed the lease on behalf of American Sportsman, as its president, and also signed a guaranty in his individual capacity.

American Sportsman operated a sporting goods store on the leased premises, which were located in downtown Bismarck. The business began to falter in 1979, and in June of 1979 American Sportsman discontinued paying the rent on the building. American Sportsman remained in the building for several months thereafter, and finally vacated the premises voluntarily in the fall of 1979. In January of 1980 Tkach leased the premises to another tenant. American Sportsman never paid the rent for the months of June through December of 1979, and at the time of the trial American Sportsman was in bankruptcy proceedings.

Tkach filed suit in November of 1979 to recover the unpaid rent. American Sportsman and Burtness counterclaimed for business losses of $75,000, claiming that Tkach had breached the lease by failure to provide adequate parking facilities and had thereby caused the failure of the business. Although the written lease contains no provisions regarding parking, American Sportsman and Burtness contend that during negotiations between the parties, Tkach agreed to pave the parking lot adjacent to the building and to provide several assigned parking spaces for American Sportsman's customers. Tkach admitted that there had been discussions regarding parking, but denied that he had agreed to pave the lot and provide reserved spots as a condition of the lease.

The district court found that American Sportsman and Burtness were liable for rent on the property for the months of June through December of 1979, a total of $9,727.12. After overruling Tkach's objections based on the parol evidence rule, the court allowed testimony regarding the alleged oral agreement on parking and concluded that the parties had indeed reached an oral agreement relating to the parking situation. Although the court further concluded that Tkach's failure to provide adequate parking was not the cause of the failure of the business, the court did award the sum of $3,000 on the counterclaim for "inconvenience" and "a minimal loss of customer generation". Judgment for Tkach was entered in the amount of $6,727.13 on March 25, 1981.

The following issues have been presented on appeal:

1. Did the district court err in admitting evidence of the alleged oral agreement between the parties?

2. Did the district court err in concluding that Burtness was personally liable for the unpaid rent under the guaranty which he signed?

3. Was the notice of breach sent by Tkach to American Sportsman and Burtness sufficient under the provisions of the lease?

4. Is it unjust to allow Tkach to retain certain improvements made to the property by American Sportsman and Burtness?

I

The appellants contend that 1) the district court erred in refusing to find that Tkach's breach of the parties' oral agreement amounted to a constructive eviction of the appellants, thereby excusing payment of rent; and, 2) the district court erred in awarding only $3,000 in damages on the counterclaim. We find it unnecessary to reach these issues, however, because we agree with the appellee that the district court erred in admitting testimony on the alleged oral agreement between the parties.

Initially, we must consider whether the parol evidence issue is properly before this court. The district court concluded that the parol evidence rule did not bar consideration of evidence of the alleged oral agreement in this case. Tkach, the appellee, has not filed a cross-appeal. In a previous case, this court has indicated that an appellee who fails to cross-appeal may not raise issues which the trial court resolved adversely to him to support the judgment. *Judson PTO v. New Salem School Bd.*, 262 N.W.2d 502, 505 (N.D.1978). We note, however, that in that case the issue had not been properly raised in the trial court, and the court's discussion of the necessity of a cross-appeal was merely dicta.

We believe the better rule to be that which has been stated by courts in several jurisdictions: An appellee for whom a favorable judgment was rendered by the trial court may, on appeal and without a cross-appeal, attempt to save the judgment by urging any ground asserted in the trial court. *Citizens Against the Lewis and Clark (Mowery) Landfill v. Pottawattamie County Board of Adjustment*, 277 N.W.2d 921, 926 (Iowa 1979); *Kafka v. O'Malley*, 221 Minn. 490, 499, 22 N.W.2d 845, 849 (1946); *Nilsen v. Tenneco Oil Co.*, 614 P.2d 36, 39 (Okl.1980); *Kramer v. City of Hayward*, 57 Wis.2d 302, 203 N.W.2d 871, 875 n.7 (1973); *Pike v. Markman*, 633 P.2d 944, 946 (Wyo.1981). We will, therefore, discuss the parol evidence issue raised by the appellee insofar as it supports the judgment below.[1]

The appellee points to § 9–06–07 of the North Dakota Century Code in support of his contention that evidence of the alleged oral agreement should not have been admitted. Section 9–06–07, N.D.C.C., provides:

> "9–06–07. *Written contract supersedes oral negotiations.*—The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

The district court held that parol evidence of the parties' alleged oral agreement regarding parking was admissible because the oral agreement was not inconsistent with the terms of the written lease. In reaching this conclusion, the district court relied upon this court's decision in *Putnam v. Dickinson*, 142 N.W.2d 111 (N.D.1966). In *Putnam, supra* 142 N.W.2d at 119, we held that § 9–06–07, N.D.C.C., "does not

---

**1.** Although we hold that an appellee who has failed to cross-appeal may seek affirmance of the judgment on grounds which were rejected by the trial court, he may not seek a more favorable result on appeal than he received in the trial court. *Baukol-Noonan, Inc. v. Bargmann*, 283 N.W.2d 158, 166 (N.D.1979). There-

fore, although we conclude in the instant case that the district court erred in considering evidence of the parties' alleged oral agreement, we can only affirm the judgment of the district court. In the absence of a cross-appeal, we cannot reverse the $3,000 award on the counterclaim.

preclude proof of the existence of any separate oral stipulation or agreement as to any matter on which the written contract is silent, and which is not inconsistent with its terms, if from the circumstances of the case the court infers that the parties did not intend the document to be a complete and final statement of the whole of the transaction between them". The district court in the instant case noted in its memorandum opinion that it inferred that "the parties intended the matter of the parking to be a part of the lease negotiations", and therefore concluded that evidence of the alleged oral agreement was admissible.

■ The district court did not specifically state that it inferred that the parties did not intend the written lease agreement to be a complete and final statement of the transaction between them. We conclude that it cannot be inferred from the circumstances in this case that the parties did not intend the written agreement to be complete. The district court never discussed Paragraph XVII of the written lease agreement, which provides:

"XVII

"That this lease constitutes the whole and complete agreement reached by and between the respective parties hereto."

This provision evinces a clear, unambiguous, written statement of the parties' intent.

We also note that the written lease was drafted by Tkach's attorney and sent to American Sportsman's attorney in Fargo in October of 1977. The record indicates, however, that the lease was not signed by Burtness until the summer of 1979, two years later. American Sportsman's attorney had nearly two years to review the written lease and suggest any changes which he felt were necessary. In addition, Burtness signed the agreement, both as president of American Sportsman and as personal guarantor, in the summer of 1979. At that time, he was aware of the difficulties regarding parking,

yet he signed a written agreement which failed to include any provision relative to parking but which contained a provision indicating that the written agreement constituted the "whole and complete agreement reached by and between the respective parties" thereto. We must assume that Burtness, an experienced businessman, and his attorney would both have read the agreement before signing it and would have made changes if they believed that the lease was incomplete.[2]

Under the circumstances presented in this case, we believe that it cannot be inferred that the parties did not intend their written agreement to be a complete and final statement of the entire transaction between them. Therefore, § 9–06–07, N.D.C.C., would bar consideration of the alleged oral agreement between the parties regarding parking.

■ Although we conclude that the district court erred in admitting evidence of the alleged oral agreement, we will not, however, reverse that part of the judgment which awarded $3,000 to the appellants on their counterclaim. The appellee has failed to file a cross appeal. In the absence of a cross-appeal, the appellee may only seek affirmance of the judgment, and may not seek a more favorable result on appeal than he received in the trial court. *Baukol-Noonan, Inc. v. Bargmann*, 283 N.W.2d 158, 166 (N.D.1979).

II

■ The second issue presented is whether or not the district court erred in concluding that Burtness was personally liable for the unpaid rent. Burtness signed the following written guaranty provision:

"We, the undersigned, do hereby personally guarantee, on behalf of the Lessee AMERICAN SPORTSMAN, INC., all of the obligations, including rent, contained in the above lease."

---

**2.** The record indicates that at the time the parties signed the written lease agreement in the summer of 1979, Burtness in fact suggested minor corrections in the written lease, which

were agreed to by Tkach. These revisions did not involve parking, however, but did involve striking out some of the names listed as guarantors.

Burtness contends that this was a guaranty of collection, rather than a guaranty of payment, and that, therefore, Tkach was required to exhaust his legal remedies against American Sportsman before Burtness's liability under the guaranty attached. We have previously discussed the differences between a guaranty of payment and a guaranty of collection in *Bank of Kirkwood Plaza v. Mueller*, 294 N.W.2d 640, 644 (N.D. 1980), wherein we quoted with approval from *State Bank of Burleigh County v. Porter*, 167 N.W.2d 527, 532–533 (N.D.1969), as follows:

" 'The fundamental distinction between a guaranty of payment and one of collection is that, in the first case, the guarantor undertakes unconditionally that the debtor will pay, and the creditor may, upon default, proceed directly against the guarantor without taking any step to collect of the principal debtor, . . . while, in the second case, the undertaking is that, if the demand cannot be collected by legal proceedings, the guarantor will pay, and consequently legal proceedings against the principal debtor and a failure to collect of him by those means are conditions precedent to the liability of the guarantor, . . .' "

In the instant case, Burtness agreed to "personally guarantee . . . all of the obligations, including rent," contained in the lease. There is no language in the guaranty which indicates that Burtness would satisfy the obligations contained in the lease only after Tkach was unable to secure performance by American Sportsman through appropriate legal proceedings. Section 22–01–09, N.D.C.C., provides:

"*22–01–09. Guaranty deemed unconditional—Exception.*—A guaranty is to be deemed unconditional unless its terms import some condition precedent to the liability of the guarantor."

The guaranty in this case does not contain any condition precedent to the liability of the guarantor. Therefore, under the circumstances presented in this case, we agree with the district court that Burtness unconditionally guaranteed payment of the rent,

and he is jointly and severally liable for the judgment entered in favor of Tkach.

### III

■ The appellants also contend that the notice of default sent by Tkach to their attorney did not comport with the notice requirements set out in the lease. Paragraph XIV of the lease provides that all notices required to be given under the contract "shall be in writing, sent by certified mail, postage prepaid, . . . to Mr. Richard K. Burtness, 109 South 5th Street, Bismarck, North Dakota 58501". The address listed was that of the leased premises, the American Sportsman sporting goods store in downtown Bismarck.

It appears from the record that at the time Tkach's attorney mailed a written notice of default to the appellants, they had already voluntarily vacated the leased premises. It is therefore obvious that any attempt to mail notice of default to Mr. Burtness at that address would have been futile.

We also note that, prior to receiving written notice of default from Tkach, the appellants instructed their attorney, Mr. Thomas C. Wold, to write to Tkach informing him that they would withhold all future rent on the premises until the parking difficulties were remedied. The letter from Wold to Tkach indicated that Tkach was to direct any further correspondence regarding the lease to Mr. Wold. Tkach then had his attorney send a written notice of default to Mr. Wold. Under the circumstances in this case, we believe that strict adherence to the notice provisions of the lease would have been futile, and the mailing of notice to the appellants' attorney satisfied the requirements of Paragraph XIV of the lease.

### IV

■ The appellants contend that it is unjust to allow Tkach to retain certain improvements made to the leased premises by the appellants. The record indicates that Burtness installed wall furnishings, carpeting, and a glass door.

Paragraph VIII of the lease provides that all "improvements, modifications, or alterations in the leased premises shall remain at the expiration of this lease". The appellants breached the lease agreement by failing to pay rent and voluntarily vacated the premises several months later. In effect, they have abandoned the improvements which were placed in the leased premises. We do not find any error in allowing Tkach to retain the improvements made by the appellants.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and SAND and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring in results.

I agree that the judgment should be affirmed but for different reasons than expressed by Justice Paulson.

Rule 52(a), NDRCivP, defines the scope of review in cases tried to the court. Findings of fact are entitled to a presumption of correctness. *Stee v. "L" Monte Industries, Inc.*, 247 N.W.2d 641 (N.D.1976). None of the specific findings made in this case were attacked by the appellant, nor were any of the conclusions of law—only the "decision" was referred to as "clearly erroneous."

"An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." *Schuh v. Allery*, 210 N.W.2d 96, 100 (N.D.1973).

*See also Keidel v. Rask*, 304 N.W.2d 402 (N.D.1981). A showing that incompetent evidence was permitted into a case is no reason to reverse the judgment. It does not affirmatively appear that all of the competent evidence is insufficient to support the findings or that any incompetent evidence induced the court to make an essential finding which would not otherwise have been made.