Leslie H. LOBERG, Plaintiff, Appellee and Cross-Appellant,

v.

Verna Loberg ALFORD, as Personal Representative of the Estate of Alvhilda Loberg, Deceased, Defendant, Shelley J. Lashkowitz, Defendant and Cross-Appellee, Mary Ann Parkhouse, Defendant and Appellant.

Civ. No. 10825.

Supreme Court of North Dakota.

Aug. 15, 1985.

Nilles, Hansen, Magill & Davies, Fargo, for plaintiff, appellee and cross-appellant; argued by J. Gerald Nilles, Fargo.

Ohnstad, Twichell, Breitling, Rosenvold, Wanner, Nelson, Neugebauer & Maring, West Fargo, for defendant; no appearance.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendant and cross-appellee; argued by Harlan G. Fuglesten, Fargo.

Stefanson, Landberg, Plambeck & Geeslin, Moorhead, Minn., for defendant and appellant; argued by Randolph E. Stefanson, Moorhead, Minn.

ERICKSTAD, Chief Justice.

Mary Ann Parkhouse appeals from a district court judgment ordering her to convey to Leslie H. Loberg all her right, title and interest to certain real property she was given by the last will and testament of Alvhilda Loberg. Leslie cross-appeals from the judgment for purposes of preserving his right to recover damages against Shelley J. Lashkowitz should this Court reverse the judgment. Lashkowitz has filed a motion to dismiss the cross-appeal on grounds Leslie has accepted substantial benefits under the court's judgment. We affirm the judgment and, accordingly, need not resolve the issue raised by the motion to dismiss.

The real property which is the subject of this lawsuit was acquired by Leslie's father, Henry Loberg, in 1918, and is described as the South Half of the Southwest Quarter (S½SW¼) of Section 20, Township 139, Range 49, Cass County, North Dakota.

Henry and his first wife, Sara, had six children: Lyle Harvey Loberg, Eugene H. Loberg, Allen H. Loberg, Verna Loberg Alford, Adelaide Loberg Barnes, and the plaintiff, Leslie H. Loberg. Sara died in 1919 and Henry later married Alvhilda. In 1952, Henry executed his last will and testament in which he devised the subject real property, less one-quarter acre that had previously been conveyed to Allen Loberg, to Alvhilda for her life and the remainder interest in equal undivided shares to Leslie and Lyle. Henry appointed Alvhilda as the executrix of his will.

Henry died on October 21, 1960. His will was admitted to probate in Cass County Court and Alvhilda was appointed the executrix. Alvhilda employed Attorney Harry Lashkowitz to act as attorney for the probate of the estate. The defendant, Shelley Lashkowitz, apparently assisted his father as an attorney in the probate proceedings.

On December 28, 1960, Leslie executed an appearance and waiver form which reads in part:

"I ... hereby waive the service of any and all papers and notices which would otherwise be required to be given in the course of the administration of the estate. . . .

"I hereby waive any right I might have to appeal from the order or decree allowing the final report and accounting, and consent that final decree of distribution may be entered immediately upon the approval of such final report and accounting."

Leslie appeared at the hearing on the petition for proof and probate of Henry's will on January 24, 1961, at which time the will was read. Alvhilda filed a final report and accounting and petition for distribution with the Cass County Court on August 4, 1961. The petition indicated that Alvhilda was entitled to the distribution of the subject real property in fee simple ownership, contrary to the terms of Henry's will. A final decree of distribution was entered and recorded in the Office of the Register of Deeds, Cass County, on August 9, 1961, assigning and vesting in Alvhilda the sub-

ject real property in fee simple. Leslie did not receive a copy of the final decree of distribution, nor did he receive notice of the hearing of the final report and accounting.

Lyle Loberg died on December 5, 1972, leaving a will in which he devised his entire estate to his sister, Adelaide.

Alvhilda died on January 27, 1982, leaving a will in which she devised an undivided one-sixth life interest each in the subject real property to Leslie, Allen, Verna, Adelaide, and Eugene, with the remainder interests in those five-sixths interests in equal shares to her step-granddaughters, Mary Ann Parkhouse and Emily Mary Shassow. The remaining one-sixth interest in the subject real property she devised in fee simple to Mary Ann and Emily in equal shares.

The trial court found that Leslie, although aware of the terms of Henry's will, did not discover the erroneous final decree of distribution until February 5, 1982. On February 26, 1982, all of the devisees in Alvhilda's will, except Mary Ann, quitclaimed their interests in the subject real property to Leslie.

In May, 1982, Leslie brought an action in district court against Verna Loberg Alford, as personal representative of the estate of Alvhilda Loberg, Mary Ann Parkhouse, and Shelley J. Lashkowitz, seeking damages, the imposition of an implied trust over the subject real property, or a judgment quieting title to the property solely in his name. Leslie also sought to recover damages from Shelley Lashkowitz, in the event that the suit against Mary Ann was unsuccessful, for his alleged negligence in preparing the final report and accounting and petition for the distribution of Henry's estate and the final decree of distribution. In her answer, Mary Ann alleged that Leslie had knowledge of the state of the title for more than twenty years and by his own negligence and by his failure to act within the applicable statute of limitations was estopped to claim any right, title or interest in the subject property, and was also guilty of laches. We assume the knowledge referred to in the answer was constructive knowledge, as it was conceded in oral argu-

ment that Leslie had no actual knowledge. Shelley Lashkowitz filed an answer alleging in part that Leslie consented to the final decree of distribution of Henry's estate thereby waiving any claim that he had.

Following a bench trial, the trial court issued a memorandum opinion and findings of fact, conclusions of law, and order for judgment incorporating therein the findings and conclusions of the memorandum opinion. We have essentially stated the trial court's findings of fact in our recitation of the facts. The court's conclusions of law read in part:

"2. That the causes of action against the Defendants, ... are not barred by any statute of limitation.

"3. That the Plaintiff's execution of an 'appearance and waiver,' does not constitute a waiver of claims based upon wrongful act, mistake, negligence or malpractice.

"4. That when the Plaintiff's rights became known he acted promptly and the defense of laches does not apply.

"5. That the Defendant, Shelley J. Lashkowitz as an attorney had a duty to use the care and skill ordinarily used in like probate proceedings by reputable members of the profession in an effort to accomplish the purpose for which he was employed.

"6. That the Defendant, Shelley Lashkowitz, negligently failed to prepare the Final Decree of Distribution in accordance with the terms of the Last Will and Testament of Henry Loberg.

"7. That ... Alvhilda Loberg was bound by a fiduciary duty when acting in her capacity of Executrix of the Estate of Henry Loberg.

"8. That Alvhilda Loberg succeeded to the subject property as the result of a mistake and the wrongful act of Defendant Shelley J. Lashkowitz.

"9. That Alvhilda Loberg is an implied trustee of the subject property for the benefit of Plaintiff.

"10. That the Defendant Mary Ann Parkhouse was not a bona fide purchaser in good faith for value and holds the

subject property as implied trustee for the benefit of Plaintiff."

The court further ordered that Verna Alford, as personal representative of Alvhilda's estate, and Mary Ann convey all their interests in the subject real property to Leslie. The court also ordered that Shelley Lashkowitz pay to Leslie the sum of $1,205.50 for his costs and disbursements.

Judgment was entered in accordance with the court's findings of fact and conclusions of law. Mary Ann raises the following issues on appeal from the judgment:

(1) Was Leslie's attempt to impose an implied trust and to quiet title to the subject property in himself an impermissible collateral attack on the final decree of distribution of Henry Loberg's estate?

(2) Was Leslie barred from bringing his action by the statute of limitation, Section 28–01–15(1), N.D.C.C.?

(3) Did the trial court err in failing to conclude that basic concepts of equity and the doctrine of laches were applicable to bar Leslie's claim due to his inexcusable delay in bringing it to the prejudice of Mary Ann?

We consider it appropriate, prior to resolving those issues raised by Mary Ann, to examine briefly the law applicable to the creation of an implied trust.

The applicable statutes read, in pertinent part:

59–01–05, N.D.C.C. *"Implied trust—Definition.*—An implied trust is one which is created by operation of law." 59–01–06, N.D.C.C. *"Implied trust—How created.*—An implied trust arises in the following cases:

\* \* \* \* \* \* ·

"2. One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an implied trustee of the thing gained for the benefit of the person who would otherwise have had it;

"3. Each one to whom property is transferred in violation of a trust holds the same as an implied trustee under such

trust, unless he purchased it in good faith and for a valuable consideration;"

▮ Implied trusts consist of two types: resulting and constructive. In *Scheid v. Scheid*, 239 N.W.2d 833, 837–38 (N.D.1976), we discussed both constructive and resulting trusts:

"A 'resulting trust' exists where the acts or expressions of the parties indicate an intent that a trust relation resulted from their transaction. . . .

"A 'constructive trust' is a trust imposed by a court in equity to compel a person who unfairly holds a property interest to convey such interest to the rightful owner. Bogert, Trusts & Trustees (2nd Ed.) § 471 (1960); Note, *Implied Trusts in North Dakota,* . . . 29 N.D.L.Rev. [58] at 59. The court imposes a constructive trust to prevent the unjust enrichment of the person wrongfully interfering with the owner's possession of the property. *Bodding v. Herman,* . . . Syll. ¶ 2 [76 N.D. 324, 35 N.W.2d 561, 562 (N.D.1948) ]; *McDonald v. Miller,* Syll. ¶ 1, 73 N.D. 474, 16 N.W.2d 270 (1944)."

▮ An implied trust, whether resulting or constructive, must be established by clear and convincing evidence. *McCarney v. Knudsen,* 342 N.W.2d 380, 385 (N.D. 1983); *Scheid v. Scheid,* 230 N.W.2d at 838.

In the instant case, the trial court determined that Alvhilda gained the subject property by mistake and the wrongful act of Attorney Lashkowitz, and that Mary Ann did not purchase the subject property from Alvhilda in good faith and for a valuable consideration.

I

Mary Ann contends that the action brought by Leslie is nothing more than a collateral attack upon the county court's final decree of distribution.

She cites *Baukol-Noonan, Inc. v. Bargmann,* 283 N.W.2d 158 (N.D.1979); *Sturdevant v. SAE Warehouse, Inc.,* 270 N.W.2d 794 (N.D.1978); *Schulz v. Saeman,*

150 N.W.2d 67 (N.D.1967); *Manikowske v. Manikowske*, 136 N.W.2d 465 (N.D.1965); and *Stenson v. H.S. Halvorson Co.*, 28 N.D. 151, 147 N.W. 800 (1913), for the proposition that a mistake of a county court in a probate proceeding cannot be corrected in a collateral action in the district court. Mary Ann apparently relies on the following from *Baukol-Noonan:*

"If the county court made a mistake in a matter over which it had exclusive jurisdiction and no appeal was taken, its decision has become final. The mistake cannot be corrected in a collateral action in the district court." *Baukol-Noonan, Inc. v. Bargmann*, 283 N.W.2d at 163, quoting *Manikowske v. Manikowske*, 136 N.W.2d at 477.

She argues that Leslie's only recourse from the county court's mistake was to appeal from the court's final decree of distribution, and that he waived his right to such an appeal by signing the appearance and waiver form. In her brief, she discusses only the *Baukol-Noonan* decision in support of her contention.

In *Baukol-Noonan*, a lessee under a coal lease, Baukol-Noonan, Inc., brought an action requesting the court to construe the terms of a trust created under a will in order to determine which of the defendants was entitled to receive payments called for under the lease. The will in question devised certain real property in trust for the benefit of the testator's two sons. The residuary of the estate was devised to the testator's wife, daughters, and step-daughter. It became known at the reading of the will that the description of the real property devised in trust omitted two quarters of land that the testator owned, and included one quarter that he did not own. The final decree of distribution entered by the county court in 1971 included in the real property held in trust the two quarters omitted from the will, and excluded the one quarter included in the will but not owned by the testator. All parties involved had executed appearance and waiver forms and no appeal was taken from the final decree of distribution.

Subsequently, Baukol-Noonan, Inc., brought an action to determine the interests in coal leases that it held relative to the real property devised in the will. Several of the residuary devisees cross-claimed alleging that they held an interest in the two omitted quarters. The trial court concluded in part that the final decree of distribution was res judicata with respect to the title of the real property at issue. We agreed, stating in relevant part:

"At the time of the probate proceedings of [the testator's] ... will and the entry of the final decree of distribution in 1971, Section 111 of the North Dakota Constitution vested exclusive original jurisdiction in probate and testamentary matters in the county court.

"This court, in recent decisions, has held that the failure to file an appeal from a final decree of distribution within the time specified bars a party to the probate proceedings from attacking the final decree of distribution if he received notice of the distribution hearing. *See, e.g., Matter of George Massad Trust*, 277 N.W.2d 269 (N.D.1979). In *Sturdevant v. SAE Warehouse, Inc.*, 270 N.W.2d 794 (N.D.1978), this court noted that a decree of the probate court is res judicata as to parties to the proceedings. In that case, because plaintiff had not been made a party to the probate proceedings, we held that the final decree of distribution was not res judicata as to him and that he was not estopped from bringing suit in district court.

"In *Manikowske v. Manikowske*, 136 N.W.2d 465, 477 (N.D.1965), this court discussed the effect of a final decree of distribution in a probate proceeding in county court:

" 'Under the provisions of Section 111 of the Constitution, the county court is vested with exclusive jurisdiction in probate and testamentary matters. In the absence of an appeal or contest within the statutory time, an order of the county court admitting a will to probate becomes final, conclusive, and immune to collateral attack. It is of equal rank with a judgment entered by other courts of record in this State. [Citations omitted.]

" 'If the county court made a mistake in a matter over which it had exclusive jurisdiction and no appeal was taken, its decision has become final. The mistake cannot be corrected in a collateral action in the district court.'

"In an earlier case, *In re Le Page's Trust*, 67 N.D. 15, 269 N.W. 53 (1936), this court stated:

" 'The county court determines by its final decree who are entitled to the estate and their portions. Section 8849, Comp.Laws. The judgment upon the final accounting is of equal rank with a judgment entered in other courts of record in this state, and is conclusive against collateral attack except on jurisdictional grounds and those of collusion and fraud.' 67 N.D. at 21, 269 N.W. at 55.

*See also Joy v. Elton*, 9 N.D. 428, 83 N.W. 875 (1900).

"We cannot conclude that the appellants' counterclaim in this matter is anything other than a collateral attack on the final decree of distribution of the probate court. The appellants were parties to the actions and signed appearance and waiver forms. That decree is now res judicata and it cannot be collaterally attacked in this action." *Baukol-Noonan, Inc.*, 283 N.W.2d at 163–64 [Footnotes omitted.]

In discussing further the action of the probate court and the final decree of distribution in *Baukol-Noonan*, we noted that because there was an error in the will concerning the description of the property to be included in the trust, the county court could have found that the will was ambiguous and that the county court had the authority to construe the will as it did in aid of the administration of the estate. *Id.* at 164.

The plaintiff in *Schulz v. Saeman*, 150 N.W.2d 67, brought an action in district court to enforce an option to purchase real estate created for his benefit in his father's will. A final decree of distribution had previously been entered in county court specifically providing for the option in fa-

vor of the plaintiff, if such option were exercised within three years of the death of the plaintiff's mother as provided in the will. After the death of his mother, the plaintiff unsuccessfully sought to exercise the option. The district court enforced the option and the defendants appealed to this Court, contending that the county court had no jurisdiction to pass on the option to purchase in the will, and that its attempt to give meaning and effect to the option provision therefore was void. In resolving this issue we noted that if the county court had jurisdiction to determine to whom the land should be distributed, subject to the plaintiff's right to purchase, the failure of the defendants to appeal from the final decree made the county court's determination final, even though the court's determination may have been erroneous. *Id.* at 70, citing *Manikowske*, 136 N.W.2d 465. We concluded that

"the county court had jurisdiction to construe the provisions of the will to determine who was entitled to the property in the estate, and the part of such property each person was entitled to receive. In making its determination as to the interest of each person in the property of the estate, it is necessary for the county court to construe that portion of the will giving the plaintiff a purported option to buy. The defendants now contend that the determination which was made by the county court was erroneous. If that is true, their remedy was to appeal from the final decree of distribution." 150 N.W.2d at 70.

In *Stenson v. H.S. Halvorson Co.*, 28 N.D. 151, 147 N.W. 800 (1913), this Court considered the power and authority of the county court to direct that a devisee's indebtedness to the estate be deducted from his share. The appellant further questioned the correctness of the county court's finding as to the amount of such indebtedness. That part of the *Stenson* decision apparently relied upon by Mary Ann follows:

"If the county court has jurisdiction, as it no doubt has, as incident to its authority to make settlement and distri-

bution of a decedent's estate, to inquire into and determine the indebtedness of the distributee to the estate and order a deduction of the same from his share, then it would seem to logically follow as a necessary conclusion that the decree of distribution would be final and conclusive as against a collateral attack." 147 N.W. at 803–04.

Of the decisions cited by Mary Ann, only *Manikowske v. Manikowske*, 136 N.W.2d 465, involved the imposition of an implied trust. In *Manikowske*, the plaintiff brought an action in district court to recover insurance premiums paid and to reform certain insurance policies purportedly issued in compliance with the last will and testament and codicil of his mother. The estate had been probated in county court and a final decree of distribution entered.

This Court determined in *Manikowske* that the district court's subsequent interpretation of the codicil constituted a collateral attack upon the final decree of distribution entered by the county court. We further determined that the county court made a mistake when it approved the final report and accounting and petition, and a policy of insurance which did not comply with the directive of the testatrix's will, but that this mistake could not be corrected in the action before the district court because it was a collateral attack upon a final judgment. *Id.* at 477. Notwithstanding the fact those determinations were made, this Court found that a confidential relationship existed between the plaintiff and two of the named defendants and that those defendants had taken unfair advantage of the plaintiff's weakness of mind, which resulted in an unjust enrichment to them. Because of these facts, we found a constructive trust in existence for the benefit of the plaintiff and ordered, among other things, that ownership of the policy be changed from one defendant to the plaintiff and that the plaintiff be awarded a judgment for the amount of money paid in premiums for the policy by the plaintiff.

As earlier stated in only one of the cases, *Manikowske*, cited by Mary Ann, was the issue of an implied trust raised, and in that case, even though the Court restated its adherence to the doctrine that a final judgment may not be collaterally attacked, it provided relief from the judgment through an implied trust.

▮▮▮ Although it is difficult to clearly distinguish the cases, we think it is significant to note that where it was concluded that alleged error in a county court judgment could not be collaterally attacked once the judgment became final, the court had actually construed a will albeit erroneously, whereas in this case, the court did not erroneously construe a will but made an obvious mistake in decreeing the property in fee simple to Alvhilda when it should have decreed the property to her for her life only. In our view, this latter situation is an appropriate case for the imposition of an implied trust where a good faith purchaser will not be prejudiced by so doing.

Incidentally, Mary Ann does not dispute on appeal the trial court's specific findings and conclusions in this regard. It is undisputed by the parties that Henry's will devised to Leslie a remainder interest in the subject real property. At the time of Henry's death in 1960, Section 56–05–25, N.D. C.C., read in part that "[t]estamentary dispositions ... are presumed to vest at the testator's death."

▮▮▮ We conclude that the court's imposition of a constructive trust in this case was proper.

## II

▮▮▮ Mary Ann contends that Leslie was barred from bringing this action by the statute of limitations, Section 28–01–15(1), N.D.C.C., which reads as follows:

> "*Actions having ten years limitations.*—The following actions must be commenced within ten years after the cause of action has accrued:
> 1. An action upon a judgment or decree of any court of the United States or of any state or territory within the United States;"

Section 28–01–15(1) does not apply to an action brought to impose and enforce a constructive trust so as to prevent the un-

just enrichment of one wrongfully interfering with the owner's possession of property. It is not an "action upon a judgment or decree."

### III

Mary Ann contends that Leslie should be barred from asserting his claim because of laches. The trial court found as fact that Leslie, "although aware of the terms of the Last Will and Testament of Henry Loberg, did not discover the erroneous Final Decree of Distribution until February 5, 1982, when Alvhilda Loberg's Will was read." This finding is not disputed by Mary Ann. The trial court concluded that when Leslie's rights became known, he acted promptly and, therefore, the doctrine of laches did not apply.

In *Wehner v. Schroeder*, 354 N.W.2d 674, 676–677 (N.D.1984), this Court discussed the application of the doctrine of laches as follows:

"Laches does not arise from a delay or lapse of time alone, but is such a delay in enforcing one's right as to work a disadvantage to another. *Simons v. Tancre*, 321 N.W.2d 495, 500 (N.D.1982); *Frandson v. Casey*, 73 N.W.2d 436, 446 (N.D. 1955). Laches is an equitable doctrine, and as such, cases involving laches must stand or fall on their own facts and circumstances. *Burlington Northern, Inc. v. Hall*, 322 N.W.2d 233, 242 (N.D.1982); *Strom v. Giske*, 68 N.W.2d 838, 845 (N.D.1954). This Court has often stated that in addition to the time element, the party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and must fail to assert them against a party who in good faith permitted his position to become so changed that he could not be restored to his former state. *E.g., Burlington Northern, Inc., supra; Adams v. Little Missouri Minerals Association*, 143 N.W.2d 659, 667 (N.D.1966)."

Mary Ann argues that Leslie was presumptively aware of the county court's mistake because he not only effectively consented to the final decree by signing the appearance and waiver form, but the filing and recording of the decree charged him with constructive notice of the mistake. She further argues that if Leslie's claim is not barred, she will be unjustly deprived of any inheritance under Alvhilda's will, and that she is prejudiced by Leslie's delay in asserting his rights because Alvhilda has died and cannot offer testimony in this matter. We find these arguments unconvincing.

■ The appearance and waiver form signed by Leslie neither refers to specific property nor contains language of conveyance. There is nothing to suggest that by signing the appearance and waiver Leslie assigned, relinquished, or otherwise altered his remainder interest in the subject real property. *See Sabot v. Fox*, 272 N.W.2d 280, 282 (N.D.1978). Leslie was present at the reading of Henry's will which devised to him a remainder interest in the real property. When Henry died, Leslie and Lyle became immediately vested with their remainder interests. Under these circumstances, we are not presented sufficient reason to charge Leslie with knowledge of the true state of the title to the property.

Accordingly, because Leslie did not learn of the county court's mistake until Alvhilda's death in 1982, he is not barred from asserting his claim by the doctrine of laches. Nor does evidence exist to support a finding that Alvhilda or Mary Ann, to their detriment, changed their position upon reliance that Alvhilda held the real property in fee simple ownership rather than a life estate.

The judgment is affirmed.

VANDE WALLE, GIERKE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

PEDERSON, S.J., sitting in place of LEVINE, J., disqualified.

VERNON R. PEDERSON, Surrogate Judge, concurring specially.

I agree that justice requires that the judgment be affirmed. I am further convinced that Chief Justice Erickstad has properly followed the sometimes-illusive-line which divides strictly probate matters, under the exclusive jurisdiction of the probate court, from other matters which may be interwoven in the probate process yet may be appropriately the subject of district court jurisdiction. The case of *O'Connor v. Immele*, 77 N.D. 346, 43 N.W.2d 649 (1950), illustrates another somewhat analogous circumstance where district court jurisdiction was upheld.